THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PAULINO CANCEL, Appellant.

First Department, March 14, 1978

**APPEARANCES OF COUNSEL**

*Eric M. Nelson* of counsel *(Breed, Abbott & Morgan,* attorneys), for appellant.

*Billie Manning* of counsel *(Barbara Gonzo* with her on the brief; *Mario Merola, District Attorney),* for respondent.

## OPINION OF THE COURT

SANDLER, J.

The defendant appeals from his conviction following a jury trial of attempted murder in the second degree, attempted robbery in the first degree, and varied lesser related offenses arising out of an attempted robbery in the early morning of September 5, 1974 of an after-hours social club.

Reversal is sought on a number of grounds, but the central question presented is whether or not the cumulative effect of various trial developments of an unquestionably prejudicial character effectively denied the defendant a fair trial.

■ Although the evidence of the defendant's guilt was very strong, and the record does not sustain the conclusion that the District Attorney acted in bad faith, we are persuaded that enough of an unacceptable character occurred to impair fatally the essential fairness of the trial and to mandate reversal.

1. The single most disturbing episode involved the testimony of Detective Venezia who arrested the defendant on September 16, 1974 in connection with an unrelated charge. The fact that the arrest involved a separate matter was not disclosed in what we assume was a well-intentioned effort to be fair. However, the result, given the date of the arrest, was to convey quite clearly that the arrest was in connection with the charges before the jury, which gave to aspects of the detective's testimony an extraordinarily deceptive and damaging quality.

In essence, Detective Venezia testified, first, to marks on the defendant's head which appeared to be recently healed wounds and were consistent with testimony concerning an injury sustained by the assailant during the course of the attempted robbery, and second, to statements by the defendant denying at first that he was Paulino Cancel and later acknowledging his identity with the comment, "You got me."

The description of the recently healed wounds was clearly appropriate, although it could have been adduced without in any way reporting that the observations were made in the course of an arrest. The testimony concerning defendant's initial denial of his identity and subsequent acknowledgment

of it, which occurred in the course of an arrest in an unrelated matter, was clearly inadmissible.

The prejudicial character of this inadmissible testimony was enormously enhanced by the circumstance that the jury had been led to believe that the witness was describing events incident to the defendant's arrest on the instant charges.

In short, the jury was misled into believing that the defendant sought to avoid his apprehension on the charges before them by falsely denying his true identity and then admitting it in terms that may well have been construed as an acknowledgment of guilt to the crime charged. The deception was clearly not intentional, but it inescapably arose out of an ill-advised effort to elicit inadmissible testimony, and what in fact occurred was extremely prejudicial. (Cf. *People v Santiago,* 15 NY2d 640.)

2. The defendant acknowledged during his direct examination that he had been previously convicted of two misdemeanors. The District Attorney closely cross-examined the defendant on the basis of a prearraignment bail report in which an interviewer had understood the defendant to say that he had been convicted of three misdemeanors and in which a check was placed that the District Attorney interpreted as noting the defendant's admission to a felony conviction as well. The cross-examination, effectively conducted and punctuated by references to the report that implied its reliability, clearly had the capacity to persuade the jury that the defendant had been previously convicted of a third misdemeanor as well as a felony, and that his sworn denials of such convictions were in fact false.

The District Attorney now frankly concedes, on the basis of later investigation, that the defendant had indeed only been previously convicted of the two misdemeanors. Although the interrogation was unquestionably conducted in good faith, the hard fact remains that the defendant was presented as a liar with regard to testimony that was in fact true in a case in which his credibility was clearly a critical issue for the jury to evaluate.

3. In his direct examination the defendant acknowledged that during his military service some eight years prior to the trial, he had been A.W.O.L. In fact, he had been A.W.O.L. for over half this military service and had undergone a number of other misadventures during the course of that service.

Whether or not any cross-examination with regard to that

military experience was justified need not here be determined. (See *People v Perez,* 46 AD2d 614, revd on other grounds 36 NY2d 848.) What is unmistakable is that the length, detail and intensity of the cross-examination that in fact took place, punctuated by multiple references to military service records, went far beyond any legitimate purpose that could have been served, and gave to these remote events an importance that they did not merit.

4. When the trial record is examined as a whole, it is clear that the jury was effectively led to understand that the defendant had committed at least four additional crimes during 1974, had been arrested for two of them, and that he had lied on cross-examination when questioned about aspects of two of these events. The weight, force and repetitiveness of the evidence, questions and offers of proof bearing on this unquestionably had a significant tendency to persuade the jury to consider the defendant as someone with a criminal disposition as well as one who had been arrested for other crimes. (See *People v Loomis,* 178 NY 400; *People v McKinney,* 24 NY2d 180; *People v Crapo,* 76 NY 288; *People v Woolson,* 42 AD2d 824.)

The District Attorney contends that all of this evidence was presented, not to demonstrate a criminal disposition, but for independent relevant purposes. This argument oversimplifies the reality of what occurred. We agree that some evidence of this character was adduced in the apparent pursuit of an appropriate probative purpose, although even where that is clear, a systematic failure to take obvious precautions to mitigate the prejudicial consequences is apparent. As to much of this evidence, however, the supposed independent admissible purposes were tenuous at best, and not remotely justifying that which was presented to the jury.

One of the many possible examples should suffice to illustrate the technique that was followed.

A Detective Conlon was called as a witness in an effort to lay a foundation for the introduction of a police photograph of March 21, 1974 taken in connection with the defendant's arrest on that date in which he was depicted wearing earrings. This was a matter of importance to the District Attorney since the witnesses to the attempted robbery of the social club had described the assailant as similarly adorned.

Detective Conlon testified to having observed the defendant

on March 21, 1974. Thereafter, the court sustained an objection to the introduction of the photograph on the ground that it was too remote in time from the events of September 5, 1974.

The District Attorney was to return to the events of March 21, 1974 in his cross-examination of the defendant's common-law wife, who had been called as an alibi witness. In a purported effort to question her as to a prior immoral act, the District Attorney asked her if she had not assaulted Detective Conlon on March 21 while the detective was seeking to arrest another individual. An objection to the question was sustained, but the damage of course had already been done. For no acceptable reason, the jury had been inexcusably alerted to the fact of the defendant's arrest for an unrelated crime.

Variations of this approach—in which tenuous or nonexistent justifications were found for the introduction or offer of unfairly prejudicial material—recur throughout the trial record.

Taken as a whole, it seems to us clear that the quantity, weight and force of the evidence implying the defendant's on-going culpability in connection with other criminal acts far exceeded any appropriate trial purpose. (Cf. *People v Condon,* 26 NY2d 139.)

As already noted, the evidence of the defendant's guilt was impressive indeed. Nonetheless, we are required to reverse the conviction in accordance with the long-standing principle that the Court of Appeals reaffirmed in *People v Crimmins* (36 NY2d 230, 238): "The right to a fair trial is self-standing and proof of guilt, however overwhelming, can never be permitted to negate this right."

The judgment of conviction, Supreme Court, Bronx County (McMahon, J.), rendered May 16, 1975, should be reversed, on the law, and the matter remanded for a new trial.

Kupferman, J. P., Lupiano, Yesawich and Sullivan, JJ., concur.

Judgment, Supreme Court, Bronx County, rendered May 16, 1975, unanimously reversed, on the law, and the matter remanded for a new trial.