■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSEPH DAVIS, Appellant. — Judgment, Supreme Court, New York County (Allen Murray Myers, J.), rendered February 24, 1981, convicting defendant of criminal possession of a controlled substance in the second degree (Penal Law, § 220.18) and sentencing him to an indeterminate term of 3 years to life, affirmed. ¶ We disagree with the dissent that the extent of the cross-examination of defendant as to his prior and current use of heroin and methadone was unnecessary or prejudicial so as to require a reversal. To the contrary, this is not a case involving excessive prosecutorial zeal which prejudiced defendant's right to a fair trial. Defendant's direct examination placed in issue his credibility relating to his heroin addiction, opening the door to cross-examination intended to explore the very matters which defense counsel had raised on direct. ¶ Defendant was questioned at length by his attorney to establish that he no longer used heroin and was involved in a methadone program. These were the first questions asked by his counsel. His direct testimony was interlaced with differing references to his having been off heroin for at least "one month", "6 weeks" and "two months," the clear implication being that he had no need to possess or sell it. He testified that he was en route from his home to his methadone clinic and, in doing so, took a most circuitous route, passing along 112th Street, which he knew was a "shooting gallery." His attorney again presented the issue of his route by asking several questions as to the indirect route taken, which was never satisfactorily explained except that defendant stated he sought to avoid encountering members of a motorcycle club, "Unicorn", whose location he never defined in relation to the path he took or the one he avoided. ¶ On cross-examination of defendant, the prosecutor explored the very areas which had been inquired into on direct and, for the most part, the extent of the cross-examination resulted from the vague, imprecise and inconsistent responses by defendant. Thus, when questioned as to whether he had in fact stopped using heroin before joining the methadone program, he responded, "I was trying to stop then. I wasn't fully." This was followed with the response, "No, sir, I wasn't using it at that time." While, on direct he claimed to have been off heroin for varying periods of time, on cross-examination he admitted he was not "totally straight" at the time of his arrest but "was working on it." Although the dissent finds fault in the questions pertaining to the methadone

program, it was defendant who first injected this issue when he endeavored to show that he was off heroin and, accordingly, had no need to "shoot up." Under the circumstances, inasmuch as the issues were explored extensively by defendant on direct, it would be unfair and unbalanced to preclude the prosecution from legitimate cross-examination. Contrary to the view expressed by the dissent, section 23.05 of the Mental Hygiene Law was intended to apply as a shield, not as a sword and, on this record, does not operate to preclude questions on the very subject introduced by defendant. ¶ On this record, we find that there was no denial of defendant's right to a fair trial. In view of the extent of defendant's direct examination, it would be palpably unfair and unreasonable to limit the prosecution on the very significant issues raised to establish the defense that defendant was "off the habit." Defendant opened the door by admitting that although he had been addicted to heroin since he was 19 years of age and had used drugs for 20 years, he discontinued such use since attending a methadone program months prior to his arrest. It is obvious that this defense was keyed to the fact that he had no need to deal in or possess heroin since the financial demands of the habit had been eliminated by his being a part of the methadone program and that his being by coincidence on 112th Street, "the shooting gallery", was to avoid some unsavory characters whose location he was unable to pinpoint. Moreover, the proof of guilt was overwhelming, defendant having been found in possession of 24 glassine envelopes of heroin after being observed for a period of time by an officer who had monitored his actions by use of power binoculars from a second-story window. Under the circumstances, considering all of the evidence, the unquestioned overwhelming proof of guilt and the absence of any objection to preserve the issue for review on appeal, at most there was harmless error (*People v Crimmins,* 36 NY2d 230). Concur — Ross, J. P., and Kassal, J. Asch, J., concurs in a memorandum, and Carro and Fein, JJ., dissent in a memorandum by Carro, J., as follows:

Asch, J. (concurring). I do not believe that the extensive cross-examination of the defendant as to his drug habit was justified. However, in my opinion the defendant received a fair trial. There could be no real question as to defendant's guilt. Moreover, as the majority points out, there was no objection so as to require review on this issue by us. Under these circumstances, I believe that the judgment below should be affirmed.

Carro, J. (dissenting). In the interest of promoting the fair administration of our system of justice, I would exercise our discretion under CPL 470.15 (subd 3, par [c]) to reverse this conviction. (Cf. *People v Dowdell,* 88 AD2d 239 [per Ross, J.]; *People v Cancel,* 61 AD2d 497 [per Sandler, J.].) ¶ Once again we are confronted with excessive prosecutorial zeal in what should have been a simple, straightforward drug possession case. As in *Dowdell* and *Cancel,* the evidence of guilt was very strong. A police officer with the Special Narcotics Unit first observed, for some time, defendant standing in front of an abandoned building, receiving a paper bag from one man and later dispensing a glassine envelope of white powder to a second man. A backup unit then arrested defendant, retrieving the bag (and its contents of 24 more glassine envelopes of heroin) from behind the stoop where the first officer had watched defendant hide it. Not a very complicated set of facts. ¶ Despite an unfavorable (and, I think, incorrect) *Sandoval* ruling, allowing the People to inquire into the underlying facts of two prior arrests and two other prior convictions,[*] defendant chose to take the stand. His version of what occurred was, of course, much

---

[*] These were a 1977 arrest for possession of a weapon and reckless endangerment; a 1971 arrest for possession of a dangerous drug; a 1972 arrest for burglary, resulting in a conviction for trespass; and a 1970 arrest and conviction for grand larceny. In addition, the court refused to automatically rule out cross-examination of defendant as to prior bad acts of a similar nature.

different, essentially characterizing himself as an innocent passerby mistakenly arrested. Defendant admitted his prior convictions and stated that at the time of his arrest he had been walking to a methadone clinic where he was under treatment. ¶ Without question, this testimony opened the door for an attack upon defendant's credibility, but the nature of the prosecutor's cross-examination, running to over 57 pages in the record, was way out of proportion. For at least 31 of those pages defendant was questioned about his 20 years of heroin addiction. The prosecutor went into excruciating detail as to that it felt like to "shoot up", what methadone was like, how much of either drug was needed and how many times a day, where he went to buy it, etc. All of this was not only unnecessary, it was a violation of subdivision (a) of section 23.05 of the Mental Hygiene Law, which provides that the "facts, proceedings, application or treatment relating to a person's participation in a substance abuse program *shall not be used against such person* in any action or proceeding *in any court."* (Emphasis supplied; accord *People v Dowdell,* 88 AD2d, at pp 244-245 [per Ross, J.].) ¶ This cross-examination was also highly and impermissibly prejudicial. As the Court of Appeals has repeatedly explained, "[T]he prosecution may not prove against a defendant, a crime not charged in the indictment merely to establish that the defendant has a propensity to commit crimes so as to raise a presumption that he would be more apt to have committed the crime charged (*People* v. *Goldstein,* 295 N. Y. 61; *People* v. *Molineux,* [168 NY 264], *supra*). The probative value of such evidence is generally outweighed by the danger that its admission would create substantial danger of undue prejudice to the defendant and it will, therefore, be excluded (*People* v. *Harris,* 209 N. Y. 70)." (*People v Condon,* 26 NY2d 139, 143; see, also, *People v Carmack,* 44 NY2d 706, 707; *People v Estrada,* 83 AD2d 564; *People v Figueroa,* 62 AD2d 971; *People v Ortiz,* 51 AD2d 710.) ¶ As in some of the above-cited cases, defense counsel at trial made but a few superficial objections (cf. *People v Dowdell, supra,* at p 243; *People v Figueroa, supra,* at p 972 [Lupiano, J., dissenting]), and did not therefore, properly preserve the issue for review. (CPL 470.05, subd 2.) Nonetheless, I believe we have a responsibility as an appellate court to supervise the fairness of the proceedings we are asked to validate. Considering the simplicity and strength of the People's case, I am mystified as to why the prosecutor felt it necessary to engage in these tactics. It is not possible to overlook them as merely harmless errors, however, since "[t]he right to a fair trial is self-standing and proof of guilt, however overwhelming, can never be permitted to negate this right." (*People v Crimmins,* 36 NY2d 230, 238 [quoted in *People v Cancel, supra,* at p 501].) It is for this reason that I would exercise the discretionary power we are vested with and reversed this conviction. ¶ Accordingly, the judgment rendered February 24, 1981 in Supreme Court, New York County (Allen Murray Myers, J., at hearing, jury trial and sentence), convicting defendant of criminal possession of a controlled substance in the second degree, should be reversed and a new trial ordered.