(April 27, 1989)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KEVIN L. BREWINGTON, Appellant.—Yesawich Jr., J. Appeal from a judgment of the County Court of Albany County (Harris, J.), rendered March 17, 1987, upon a verdict convicting defendant of the crimes of rape in the first degree and sodomy in the first degree (two counts).

The victim of this savage rape and sodomy testified that around 7:00 A.M. on September 3, 1986, while the sun was out, her assailant grabbed her in a supermarket parking lot while she was depositing clothes in a Salvation Army bin, dragged her into a nearby wooded area, where he subdued her by threatening her with a large, dark-handled kitchen knife, beat her, tied her up and gagged her with her bra. Upon reporting the sexual assault to police, the victim was given a physical examination which disclosed injuries consistent with her account and, while under medication, she was shown a photo array of six men matching her description from which she selected defendant's picture as being that of her attacker. At the time of the rape, defendant was working at an institution housing mentally disabled patients adjacent to the supermarket where the abduction occurred.

Police visited defendant at his apartment at approximately 10:00 A.M. the morning of the rape and asked him to accompany them to the police station, which he did. The police also retrieved a dark-handled kitchen knife from his apartment. At the police station, defendant was photographed and samples of his hair, pubic hair and fingernail scrapings were taken. No incriminating forensic evidence was found on defendant, or on

his knife. That afternoon, the victim picked defendant from a six-man lineup as the one who had attacked her.

At his trial, defendant presented as alibi witnesses three coemployees who had seen him intermittently between 6:45 A.M. and 8:00 A.M. on September 3, 1986. Defendant also called the victim's identification into question, focusing especially on the shirt he wore. The victim described her attacker's shirt as a blue, velour-like shirt with a red stripe, not a dress shirt. Defendant maintained he had been wearing the blue and white striped dress shirt he had on when the police came to see him. His coemployees alternately described the shirt he was wearing that morning as (1) a light-colored printed shirt, (2) a light and dark blue pullover, (3) a light button-up shirt, and (4) a red and blue plaid, button-down-collar sport shirt. The only evidence connecting defendant to the crimes in any substantial way was the victim's identification of him as the offender, which she repeated at trial. Convicted, as charged, on all counts defendant appeals; we affirm.

Defendant's principal contention is that the evidence does not support his conviction. In evaluating this claim, we view the evidence in the light most favorable to the prosecution, not because this court is prohibited from weighing the evidence—quite the contrary (see, *People v Bleakley,* 69 NY2d 490, 493-495)—but because the jury, being in a superior position to evaluate the testimony, has resolved credibility questions raised by the evidence in favor of the People (see, *People v Kennedy,* 47 NY2d 196, 201-203). Since there is no longer a requirement that a rape or sodomy victim's testimony be corroborated, except in circumstances not relevant here (see, Penal Law § 130.16; see also, *People v Chilson,* 133 AD2d 931, 932-933, *lv denied* 71 NY2d 893), the jury's task was to judge the victim's veracity, memory and perception when she testified that defendant's face had been within "a few inches" of hers during her brutal ordeal. The alibi witnesses did not eliminate the possibility that defendant had surreptitiously left his job to go to the scene of the crime, some 45 seconds away, for long enough to commit the charged acts. Moreover, the alibi testimony, though uncontroverted, is subject to credibility evaluation by the jury (*People v Regina,* 19 NY2d 65, 72). Finally, the trial testimony lends itself to the conclusion that defendant changed his shirt and lied about having done so. The absence of inculpatory physical evidence on defendant's person or his clothing does not foreclose us from finding that the weight of the evidence favors the prosecution given the jury's obvious acceptance of the victim's testimony. Ac-

cordingly, we find legally sufficient and adequately probative evidence to sustain defendant's conviction *(see, People v Bleakley, supra).*

As for County Court's *Sandoval* decision, challenged by defendant, permitting the People to impeach him with his prior convictions for criminal trespass and unlawful possession of a weapon and with various bad acts committed while he was imprisoned, but forbidding inquiry into defendant's manslaughter conviction and allegations of sexual harassment of defendant's coemployees, we find that to be an eminently reasonable compromise between suppression of unfairly inflammatory evidence and evidence probative of defendant's credibility *(see, People v Pavao,* 59 NY2d 282, 292; *People v Sandoval,* 34 NY2d 371, 375). Defendant also complains that one line of questioning by the prosecution delved into sexual harassment by defendant of his patients, though this issue was never broached at the *Sandoval* hearing. However, the thrust of this line of questioning was clearly temporal, not sexual, in that the prosecutor was attempting to establish whether patients would be incapable of complaining if defendant had shirked certain of his duties to save time, thus allowing him more time to commit the crimes charged. Only once was such a question interpreted in a sexual context:

"Q By the way, these patients, most of them aren't verbal, are they?

"A No. We have a couple verbals, two, and a lady who's verbal but echolalic.

"Q They can't complain to you if something is or is not done to them.

"[Defendant's counsel]: Objection. * * *

"THE COURT: I'll let her answer.

"THE WITNESS: Well, the lady who is an echolalic, no. The other two ladies, one would tell you, yeah, if he had done— you're talking about sexual acts, yes. The other one would probably tell you and we keep a good eye on it but it would be real iffy."

The answer was hypothetical, and given the absence of any proof whatsoever on the subject and County Court's instruction generally that every inference be construed in defendant's favor, the error was harmless.

Finally, defendant's contentions that County Court shifted the burden of proof to him in its charge on the issue of identity and failed to adequately marshal the evidence are patently without merit.

Judgment affirmed. Mahoney, P. J., Kane, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.