People v Cipriani (2025 NY Slip Op 06759)

People v Cipriani

2025 NY Slip Op 06759

Decided on December 4, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 4, 2025

112295
[*1]The People of the State of New York, Respondent,
v
Timothy Cipriani, Appellant.

Calendar Date:October 9, 2025

Before:Garry, P.J., Clark, Aarons, Lynch and Powers, JJ.

G. Scott Walling, Slingerlands, for appellant.
Robert M. Carney, District Attorney, Schenectady (Christopher D. Horn of counsel), for respondent.

Clark, J.
Appeal from a judgment of the County Court of Schenectady County (Matthew Sypniewski, J.), rendered December 18, 2019, upon a verdict convicting defendant of the crimes of burglary in the third degree, criminal mischief in the fourth degree and attempted petit larceny.
Around 1:00 a.m. on March 25, 2018, the security system at Maxon's American Grill in the Town of Rotterdam, Schenectady County, alerted that there was a possible break-in at the establishment. When police arrived on scene, they obtained surveillance footage and physical evidence confirming that the restaurant had been broken into, yet no money or property had been taken. A single cloth "work glove" was found just below the burglar's point of entry, which was collected and swabbed in four areas for DNA. All of the swabbed areas came back positive for a mixed DNA profile, establishing that there were at least two contributors. After the DNA analyst confirmed that the major DNA contributor on all swabbed locations matched defendant's DNA profile, he was arrested and charged by indictment with burglary in the third degree, criminal mischief in the fourth degree and attempted petit larceny. Following a jury trial, defendant was convicted as charged. County Court denied defendant's CPL 330.30 motion to set aside the verdict and sentenced him, as a persistent felony offender, to a prison term of 15 years to life for the burglary conviction, which was to run concurrently with the sentences on the remaining convictions.[FN1] Defendant appeals.
Defendant contends that the verdict is not supported by legally sufficient evidence and is against the weight of the evidence, arguing that the People did not prove his identity as the perpetrator of the burglary. Defendant's legal sufficiency challenge is unpreserved. Although defendant's motion for a trial order of dismissal at the close of the People's case-in-chief made the specific argument he advances on appeal, he failed to renew his motion following the close of his case (see People v Oates, 222 AD3d 1271, 1272 [3d Dept 2023]; People v Mercer, 221 AD3d 1259, 1260 [3d Dept 2023], lv denied 41 NY3d 1003 [2024]). "Nevertheless, in reviewing whether the verdict is against the weight of the evidence, this Court necessarily must ensure that the People proved each element of the crime[s] beyond a reasonable doubt" (People v Starnes, 206 AD3d 1133, 1135 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 38 NY3d 1153 [2022]; accord People v Goberdhan, 241 AD3d 992, 993 [3d Dept 2025], lv denied ___ NY3d ___ [Oct. 15, 2025]).
"When undertaking a weight of the evidence review, [this Court] must first determine whether, based on all the credible evidence, a different finding would not have been unreasonable and then, if not, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence[*2]" (People v Ashe, 208 AD3d 1500, 1501 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 39 NY3d 961 [2022]; see People v Alger, 206 AD3d 1049, 1050-1051 [3d Dept 2022], lv denied 38 NY3d 1148 [2022]). This review entails viewing the evidence in a neutral light and according deference to the jury's credibility determinations (see People v Ashe, 208 AD3d at 1501; People v Furman, 152 AD3d 870, 875 [3d Dept 2017], lv denied 30 NY3d 1060 [2017]). Moreover, in a case premised solely upon circumstantial evidence, this Court must be satisfied "that the [jury's] inference of [defendant's] guilt is the only one that can fairly and reasonably be drawn from the facts, and that the evidence excludes beyond a reasonable doubt every reasonable hypothesis of innocence" (People v Baque, 43 NY3d 26, 30 [2024] [internal quotation marks and citation omitted]; accord People v Stowe, 240 AD3d 946, 949 [3d Dept 2025]; People v Williams, 239 AD3d 1090, 1094 [3d Dept 2025], lv denied 44 NY3d 985 [2025]).
As charged to the jury, "[a] person is guilty of burglary in the third degree when he [or she] knowingly enters or remains unlawfully in a building with intent to commit a crime therein" (Penal Law § 140.20). "A person is guilty of criminal mischief in the fourth degree when, having no right to do so nor any reasonable ground to believe that he or she has such right, he or she . . . [i]ntentionally damages property of another person" (Penal Law § 145.00 [1]). "A person is guilty of petit larceny when he [or she] steals property" (Penal Law § 155.25). Finally, "[a] person is guilty of an attempt to commit a crime when, with intent to commit a crime, he [or she] engages in conduct which tends to effect the commission of such crime" (Penal Law § 110.00).
Defendant does not dispute that the People proved beyond a reasonable doubt that someone knowingly broke into Maxon's American Grill during the early morning hours of March 25, 2018 with the intent to commit a crime therein. Indeed, the surveillance footage admitted into evidence showed that a masked individual wearing a hoodie entered the kitchen area of the restaurant at 12:51 a.m. through a wall vent above the pizza oven. The individual then crawled around the restaurant with what appears to have been a crowbar tucked into the back of his or her pants. As depicted in the video footage, the individual located a cashier's box behind the restaurant's bar area and attempted to exit the premises with this item through a back door, but was unable to open the door. Around 12:55 a.m., the individual ran back to the kitchen area, climbed on top of the pizza oven and disappeared back through the wall vent above the oven. The cashier's box fell to the floor as the individual did so. The owner of Maxon's American Grill proceeded to the restaurant shortly after 1:00 a.m. in response to a telephone call that the restaurant's security alarm had been triggered. Upon his arrival, the owner observed "clutter" on [*3]the floor and that the cash box was out of place. He also located a louvered vent cover on the floor in front of the pizza oven, explaining that the wall vent in this area provided access to the exterior of the restaurant. When police arrived on scene, they located a singular, cloth work glove, which appeared to be old and worn, on the floor directly below this area. The People elicited testimony that the kitchen staff at the restaurant wore plastic gloves.
Four areas of the cloth glove were swabbed for DNA: the inside palm, the inside cuff, the back of the hand and the inside of all five fingers. The forensic analyst who performed the DNA analysis confirmed that there was a mixed DNA profile on all four areas of the glove, meaning that DNA from at least two different individuals was present. However, the analyst identified a major contributor to the mixed DNA profile located in each of the four areas, testifying that the major contributor matched defendant's DNA profile and that the probability of selecting an unrelated donor matching the major contributor was less than one in 320 billion.[FN2] She further testified that a major contributor means "a person whose DNA is present in greater quantities," explaining that such designation requires the person's DNA to be "four times greater [in intensity] than that of any other donor . . . in eight or more locations" on the DNA strand. Notably, the forensic analyst confirmed that there was a "full major contributor profile" located on the swab from the inside of the glove's fingers, signifying that the major contributor's DNA was "four times greater in intensity" at "every single location" on the DNA strand. Although the forensic analyst acknowledged that the DNA evidence did not, in and of itself, establish who wore the glove during the burglary, she highlighted that a person who is sweating may leave behind more DNA than an individual who is not sweating. Following testimony from this witness, the People rested their case-in-chief.
Defendant presented an alibi defense and called several witnesses to testify on his behalf. In that regard, defendant's brother testified that he had worked in construction with "a lot of guys," and that defendant sometimes worked with him. He further testified that, when he worked construction jobs, he brought buckets of equipment to the worksite, including gloves that his workers were permitted to use. However, there was no inventory system to keep track of whether all of the gloves were returned at the end of each use.
Defendant's girlfriend also took the stand at trial, testifying that she was with defendant on the evening in question. She testified that she picked defendant up in Schenectady on the evening of March 23, 2018 and drove him back to her residence in Oneida County approximately an hour and 45 minutes away. The girlfriend maintained that defendant stayed at her residence in Oneida County until the afternoon of March 25, 2018, and that she drove him back to Schenectady [*4]County at approximately 2:00 p.m. — i.e., approximately 13 hours after the burglary. The girlfriend maintained that defendant did not leave her residence at any point during the weekend in question.
On cross-examination, the girlfriend acknowledged that she drove on back roads to pick up defendant in Schenectady on the evening of March 23, 2018, revealing that she had her youngest child with her and explaining that she does not like to drive on the Thruway when she has "a little one in the car." She further testified that defendant would either take the train to get to her residence or she would pick him up in Schenectady, but conceded on cross-examination that she had picked him up in Schenectady just twice between when she first met him in person in December 2017 and the date of her testimony, the first time being the weekend of the underlying burglary.
The girlfriend's daughter corroborated some of the girlfriend's testimony in this regard, testifying that defendant came up to Oneida County to visit the girlfriend every weekend from December 2017 through at least the end of March 2018, and that he would either take the train or the girlfriend would pick him up. She testified that she saw defendant at the girlfriend's residence in Oneida County around 2:00 p.m. on Saturday, March 24, 2018 and that, when defendant came up on weekends, he typically stayed from Friday to Sunday.
In rebuttal, the People called defendant's parole officer to testify.[FN3] The officer, who referred to himself in front of the jury as a state employee, testified that he knew defendant in a professional capacity, maintained a record of when defendant left the Capital Region as a result of that professional relationship, and that defendant was required to tell him when he went to visit his girlfriend in Oneida County and could face consequences if he failed to do so. This witness testified that defendant had, on prior occasions, informed him of such visits, but did not do so on the weekend in question.
On this record, a different verdict would not have been unreasonable had the jury accepted defendant's alibi defense. However, the veracity of the alibi testimony implicated a credibility determination for the jury to resolve, taking into account "the entire record, . . . [as well as] the demeanor, interest and motives of the [alibi] witnesses" (People v Regina, 19 NY2d 65, 72 [1966]; see People v Sindoni, 178 AD3d 1128, 1130-1131 [3d Dept 2019]; People v Brewington, 149 AD2d 852, 853 [3d Dept 1989], lv denied 74 NY2d 737 [1989]). "[W]hen viewing the evidence in a neutral light and weighing the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn therefrom" (People v Bohn, ___ AD3d ___, ___, 2025 NY Slip Op 05846, *8 [3d Dept Oct. 23, 2025] [internal quotation marks and citations omitted]; see People v Bleakley, 69 NY2d 490, 495 [1987]), the jury could readily reject defendant's alibi defense and conclude beyond [*5]a reasonable doubt that he was the perpetrator of the burglary.
In addition, the People presented video footage from the underlying event (compare People v Coke, 238 AD3d 71, 77-78 [1st Dept 2025]), providing the jury with an opportunity to compare the race, height, build and general features of the perpetrator to defendant (see generally People v Pandajis, 147 AD3d 1469, 1470-1471 [4th Dept 2017], lv denied 29 NY3d 1084 [2017]). Forensic evidence also linked defendant to the cloth glove found at the crime scene. The glove was found directly below the burglar's point of entry and the testimony established that kitchen staff only wore plastic gloves. Although the swabs from inside of the glove contained mixed DNA profiles, the DNA analyst confirmed that defendant's DNA profile matched that of the major contributor in all areas swabbed — a designation reserved for situations where a person's DNA is found in substantially greater quantities than that of the other contributors. We are mindful of the DNA analyst's testimony that there was no way to determine, based solely upon the forensic findings, at what point in time any of the contributors wore the glove. However, the jury heard testimony that sweating can cause a person to shed DNA in greater quantities. The video footage showed the perpetrator of the burglary exerting significant effort to gain entry into the restaurant through a covered wall vent as well as running to flee the establishment while wearing gloves. This evidence permitted a reasonable inference that the DNA from the major contributor — which, as noted, matched defendant's DNA profile — was deposited inside of the glove during the commission of the burglary. Moreover, the alibi testimony from defendant's girlfriend was not corroborated by any documentary evidence and was called into doubt by the testimony of the state official that when defendant went to his girlfriend's house in Oneida County, he was required to inform the official and failed to do so on the weekend in question (see generally People v Regina, 19 NY2d at 72). Under the particular circumstances of this case, we are satisfied that the jury's "inference of [defendant's] guilt is the only one that can fairly and reasonably be drawn from the facts, and that the evidence excludes beyond a reasonable doubt every reasonablehypothesis of innocence" (People v Baque, 43 NY3d at 30 [internal quotation marks and citation omitted]; accord People v Williams, 239 AD3d at 1094). Accordingly, we find that the verdict on the burglary charge is in accord with the weight of the evidence (see People v Warr, 237 AD3d 1262, 1266 [3d Dept 2025], lv denied 43 NY3d 1059 [2025]; People v Galusha, 211 AD3d 1421, 1424 [3d Dept 2022], lv denied 39 NY3d 1154 [2023]; People v Griffin, 122 AD3d 1068, 1069-1070 [3d Dept 2014], lv denied 25 NY3d 1164 [2015]), and we reach the same conclusion with respect to the remaining counts.
Furthermore, contrary to defendant's contention, County Court did not [*6]err in permitting the People to present testimony from his parole officer in rebuttal to defendant's case-in-chief (see CPL 260.30 [7]; People v Gragnano, 63 AD3d 1437, 1443 [3d Dept 2009], lv denied 13 NY3d 939 [2010]). Such "rebuttal testimony was used to challenge the validity of the alibi" defense proffered by defendant (People v Brooks, 210 AD2d 800, 802-803 [3d Dept 1994], lv denied 85 NY2d 906 [1995]), and went to "a material, core issue in the case — defendant's whereabouts at the time of the crime" (People v Cade, 73 NY2d 904, 905 [1989]; see People v Harris, 57 NY2d 335, 345 [1982], cert denied 460 US 1047 [1983]; People v Morehouse, 202 AD3d 1370, 1371 [3d Dept 2022], lv denied 38 NY3d 1073 [2022]). We reject defendant's contention that the rebuttal testimony was too speculative to be probative of the validity of defendant's alibi defense (see People v Anonymous, 275 AD2d 210, 212 [1st Dept 2000]). Moreover, any Molineux concern was mitigated by County Court's determination that the People would not be allowed to elicit testimony revealing that this witness was defendant's parole officer or that defendant was on parole (see People v Favors, 155 AD3d 1081, 1084 [3d Dept 2017]).
We also decline defendant's request to modify the sentence imposed by County Court. Defendant does not challenge his status as a persistent felony offender and, upon reviewing the presentence report and considering the totality of the circumstances, we conclude that sentencing him as a persistent felony offender to a prison term of 15 years to life, to run concurrently with an analogous sentence imposed on a different indictment, was not unduly harsh or severe (see CPL 470.15 [6] [b]; People v Pointer, 206 AD3d 1232, 1236 [3d Dept 2022], lv denied 38 NY3d 1152 [2022]; People v Durham, 148 AD3d 1293, 1296 [3d Dept 2017], lv denied 29 NY3d 1091 [2017]). Defendant has an extensive criminal history, dating back to 1988, that has spanned most of his adult life. Several of his prior convictions are for larcenous offenses and he has continued to commit crimes, including commercial burglaries, while on parole supervision, demonstrating that shorter sentences have not served as a deterrent. Accordingly, we decline to reduce the sentence in the interest of justice. Defendant's remaining contentions, to the extent not expressly addressed, have been considered and found lacking in merit.
Garry, P.J., Aarons, Lynch and Powers, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: The sentencing hearing pertained to two different indictments against defendant, which were tried separately but joined for sentencing purposes. The sentences imposed on the two indictments were to run concurrently with one another.

Footnote 2: The DNA analyst confirmed that at least two males contributed to the mixed DNA profile from the inside of the fingers, but she could not tell the sex of the additional donor on the other swabbed areas of the glove.

Footnote 3: County Court precluded the People from eliciting testimony that defendant was on parole and, thus, the People did not refer to this witness as a parole officer at trial.