■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DEVAUGHN J. BALLARD, Appellant. [831 NYS2d 285]—

Cardona, P.J. Appeals (1) from a judgment of the County Court of Broome County (Smith, J.), rendered February 20, 2004, upon a verdict convicting defendant of the crimes of murder in the second degree and conspiracy in the second degree, and (2) from a judgment of said court, rendered July 20, 2004, which resentenced defendant.

At defendant's behest, Jahsib Headley and Craig Alexander fired numerous shots at Ronnie Davis as he stood on Chenango Street in the City of Binghamton, Broome County, resulting in

his death. In fact Headley[1] and Alexander[2] shot the wrong man; the intended victim was Ratike Wimberly, who defendant claimed had shown him "disrespect" at a nightclub. Following a jury trial, defendant was convicted of murder in the second degree and conspiracy in the second degree. He was sentenced to consecutive prison terms of 25 years to life on the murder charge and 8 to 16 years on the conspiracy charge.

Defendant argues that the verdict was not supported by legally sufficient evidence. We do not agree. Several witnesses testified that defendant was angry at Wimberly and had stated that he was bringing up some people from New York City to take care of him. Defendant's neighbor, Lisa Mack, indicated that she drove defendant to a Western Union office where he wired money to Headley and Alexander, who arrived in Binghamton the following day. Mack thereafter declined defendant's request to drive Headley and Alexander to Chenango Street where they would shoot someone. Defendant then threatened to have her boyfriend shot and to kill her if she said anything.

Mack and another person, accomplice Matthew Young, each overheard Headley and Alexander discussing with defendant plans to "get" Wimberly. Young also testified that on the night of the shooting he drove Headley and Alexander to the vicinity of the crime. They exited the car and moments later Young heard gunshots. Headley and Alexander returned to the car and Young drove them to his niece's house where they hid two guns. According to Young, defendant arrived half an hour later and told them that they shot the wrong man, to which Headley responded that they shot the man defendant showed to them. Several days later, defendant called Young and asked him to bring his guns to him in New York City—the same guns used in the shooting.

Viewed in the light most favorable to the People (*see People v Plaisted*, 2 AD3d 906, 907 [2003], *lv denied* 2 NY3d 744 [2004]), the evidence sufficiently establishes that defendant intended Wimberly's death, he solicited, requested or commanded Headley and Alexander to shoot him, and he intentionally aided them in that undertaking (*see* Penal Law §§ 20.00, 125.25 [1];

---

1. Headley was convicted at a separate trial of murder in the second degree, conspiracy in the second degree, criminal possession of a weapon in the second degree and criminal possession of a weapon in the third degree stemming from Davis's murder (*People v Headley*, 38 AD3d 1007 [2007] [decided herewith]).

2. Alexander was convicted, upon his guilty plea, of manslaughter in the first degree stemming from Davis's murder (*People v Alexander*, 21 AD3d 1223 [2005], *lv denied* 5 NY3d 881 [2005]).

*People v Rosado*, 26 AD3d 532, 533 [2006], *lv denied* 7 NY3d 762 [2006]; *People v Andrews*, 274 AD2d 835, 837 [2000], *lv denied* 95 NY2d 960 [2000]; *People v Rosado*, 244 AD2d 772, 773 [1997], *lv denied* 91 NY2d 977 [1998]). Contrary to defendant's contention, the People were not required to prove that defendant intended to kill Davis, only that "[w]ith intent to cause the death of another person, he cause[d] the death of such person *or of a third person*" (Penal Law § 125.25 [1] [emphasis added]; *see People v Fernandez*, 88 NY2d 777, 781-782 [1996]).

The evidence also sufficiently proves defendant's participation in the conspiracy to commit murder (*see* Penal Law §§ 105.15, 105.20; *People v Faccio*, 33 AD3d 1041, 1043 [2006]). Despite defendant's argument to the contrary, the People were not required to prove that the object of the conspiracy was attained, only that an overt act, such as defendant directing Headley and Alexander to travel to Binghamton, was completed in furtherance of the conspiracy (*see People v Arroyo*, 93 NY2d 990, 991-992 [1999]; *People v Ribowsky*, 77 NY2d 284, 292-293 [1991]). Furthermore, upon our own independent review of the record, we conclude that the verdict is supported by the weight of the evidence (*see People v Bleakley*, 69 NY2d 490, 495 [1987]; *People v Doherty*, 37 AD3d 859, 860 [2007]).

Next, we are unpersuaded by defendant's contention that County Court should not have allowed the admission of certain evidence of uncharged crimes. Specifically, defendant challenges Mack's testimony regarding defendant's attempts to cover up his role in the murder, and Young's testimony regarding his transport of defendant's guns to Brooklyn and his transport of cocaine to Binghamton for sale on defendant's behalf. We find the evidence to be inextricably intertwined with the charged crimes and highly probative of defendant's complicity in the murder and the conspiracy, outweighing any claim of prejudice (*see People v Faccio, supra* at 1042; *People v Williams*, 28 AD3d 1005, 1008 [2006], *lv denied* 7 NY3d 819 [2006]).

Defendant also contends that County Court should have given the jury an interested witness charge with respect to Young, since Young was testifying pursuant to a favorable arrangement with the People. However, that charge was not requested at trial and, to the extent defendant claims that defense counsel's failure to request it constituted ineffective assistance, we note that defendant was not prejudiced herein since the court charged the jury on both credibility and accomplice testimony. Taken together, those charges were sufficient to inform the jury of the need to scrutinize Young's testimony (*see People v Inniss*,

83 NY2d 653, 658-659 [1994]; *People v Walker*, 274 AD2d 600, 601 [2000], *lv denied* 95 NY2d 908 [2000]).

Defendant's challenges to his sentence are likewise unavailing. Consecutive sentences were permitted here (*see* Penal Law § 70.25 [1], [2]), and nothing in the record indicates that those sentences were imposed in retaliation for defendant's protestations of innocence (*see People v Chappelle*, 14 AD3d 728, 729 [2005], *lv denied* 5 NY3d 786 [2005]; *People v Fletcher*, 309 AD2d 1085, 1086 [2003], *lv denied* 1 NY3d 571 [2003]) or that any extraordinary circumstances exist warranting modification in the interest of justice (*see People v Hansen*, 290 AD2d 47, 57 [2002], *affd* 99 NY2d 339 [2003]).

Defendant's remaining contentions, advanced in his pro se brief, are unpreserved and, in any event, without merit.

Peters, Spain, Carpinello and Kane, JJ., concur. Ordered that the judgments are affirmed.