■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAHSIB T. HEADLEY, Appellant. [831 NYS2d 288]—

Cardona, P.J. Appeal from a judgment of the County Court of Broome County (Smith, J.), rendered March 10, 2004, upon a verdict convicting defendant of the crimes of murder in the second degree, conspiracy in the second degree, criminal possession of a weapon in the second degree and criminal possession of a weapon in the third degree.

Mistakenly believing Ronnie Davis to be a man called Ratike, defendant and another man, Craig Alexander, fired numerous rounds from a 9mm handgun and a .32 caliber handgun at Davis as he stood outside a Vinny Mart in the City of Binghamton, Broome County. Davis died as a result of his injuries. Following a jury trial, defendant was convicted of murder in the second degree, conspiracy in the second degree, criminal possession of a weapon in the second degree and criminal possession of a weapon in the third degree, and sentenced to an aggregate prison term of 33 years to life.

Defendant argues that the verdict is against the weight of the evidence. Specifically, he contends that accomplice Matthew Young's testimony should be discredited because he was testifying pursuant to an agreement with the District Attorney's office, that police informant Lisa Mack should be disbelieved because she had previously sold marihuana for defendant's brother, Devaughn Ballard,[1] and had received favorable treatment from the District Attorney's office, and that police

---

1. Ballard was convicted at a separate trial of murder in the second degree and conspiracy in the second degree stemming from Davis's murder (*People v Ballard*, 38 AD3d 1001 [2007] [decided herewith]).

investigator Brett Surace either coerced defendant's oral confession or concocted it to conform with the other evidence in the case.

At trial, Young testified that several weeks before the shooting, he overheard defendant, Ballard and Alexander[2] discussing plans to kill Ratike, who Ballard claimed had been disrespectful to him. On the night of the shooting, Young drove defendant and Alexander to the vicinity of the shooting and parked the car; defendant and Alexander exited the car and Young heard gunshots moments later. When they returned to the car, Young drove them to his niece's house where they hid the guns. Ballard arrived shortly thereafter and told them they had shot the wrong man.

Mack testified, among other things, that she saw Young, Alexander, defendant and Ballard together in Ballard's apartment around 8:00 P.M. on the night of the shooting. She never saw defendant or Alexander after that, but Ballard was subsequently in telephone contact with her. Those conversations were taped after she spoke with the police.

Surace testified that when defendant was picked up in Brooklyn and taken to the local precinct for questioning, he first denied involvement in the shooting; then, after other officers left the room, he began to cry and evinced concern for his young daughter. Defendant then admitted, among other things, that Ballard sent him after Ratike and that he fired the .32 caliber handgun. Surace testified that the oral confession was not taped because, due to crowding at the precinct, the interview took place in an office not equipped with recording equipment. When he left the office and returned with paper, defendant refused to execute a written confession and instead asked for an attorney.

We note that credibility determinations are within the province of the jury (*see People v Bleakley*, 69 NY2d 490, 495 [1987]; *People v Doherty*, 37 AD3d 859, 860 [2007]; *People v Hargett*, 11 AD3d 812, 814 [2004], *lv denied* 4 NY3d 744 [2004]). According due deference to those determinations, upon our independent review of the record we conclude that the verdict was not against the weight of the evidence (*see People v Bleakley, supra* at 495; *People v Doherty, supra* at 860).

Finally, defendant contends that his conviction of criminal possession of a weapon in the third degree (*see* Penal Law

---

**2.** Alexander was convicted, upon his guilty plea, of manslaughter in the first degree stemming from Davis's murder (*People v Alexander*, 21 AD3d 1223 [2005], *lv denied* 5 NY3d 881 [2005]).

§ 265.02 [former (4)]) should be reversed because that crime is a lesser included offense of criminal possession of a weapon in the second degree (*see* Penal Law § 265.03 [former (2)]), of which he was also convicted. This argument is without merit (*see People v Okafore*, 72 NY2d 81, 89 n 3 [1988]; *People v Johnson*, 24 AD3d 958, 959 [2005], *lv denied* 6 NY3d 814 [2006]). Furthermore, under the circumstances of this case, we decline to reverse the conviction in the interest of justice.

Peters, Spain, Carpinello and Kane, JJ., concur. Ordered that the judgment is affirmed.