Mulvey, J.
 

 Appeal from a judgment of the County Court of Schuyler County (Morris, J.), rendered May 21, 2015, upon a verdict convicting defendant of the crimes of burglary in the second degree (four counts) and criminal possession of stolen property in the fifth degree (five counts).
 

 Following an investigation, it was determined that, in late May and early June 2014, defendant and codefendants Jacob Payne and Ralph Starace stole farm machinery and associated metal components from the farmhouse and surrounding property of William Dodge (hereinafter the victim), who was in the business of purchasing and selling used farm equipment from his 90-acre farm. Defendant, Payne and Starace then transported the stolen metal to various scrap yards, where it was sold for cash. Defendant was thereafter charged by indictment with five counts of burglary in the second degree and five counts of criminal possession of stolen property in the fifth degree. At the beginning of defendant’s jury trial, one burglary count was dismissed and he was thereafter convicted of the remaining nine counts.
 
 [1]
 
 County Court sentenced defendant to an aggregate prison term of seven years with five years of post-release supervision and, following a hearing, ordered him to pay $14,001.75 in restitution. Defendant now appeals.
 

 Defendant’s primary contention on appeal is that the burglary convictions are against the weight of the evidence, in that the People failed to establish that he ever entered the victim’s dwelling or was aware that items of property that he helped load and sell as scrap had been taken from inside the victim’s dwelling. As relevant here, to support a conviction for burglary in the second degree, the People were required to prove that defendant “knowingly enter [ed] or remain [ed] unlawfully in a building with intent to commit a crime therein” and that “[t]he building [was] a dwelling” (Penal Law § 140.25 [2]). The People were not required to prove that defendant had the intent to commit a particular offense upon entering the dwelling (see People v Womack, 143 AD3d 1171, 1171 [2016], lv denied 28 NY3d 1151 [2017]; People v Briggs, 129 AD3d 1201, 1203 [2015], lv denied 26 NY3d 1038 [2015]). Further, a dwelling, defined as “a building which is usually occupied by a person lodging therein at night” (Penal Law § 140.00 [3]), “does not lose its character as such merely because its occupant is temporarily absent” (People v Ferguson, 285 AD2d 838, 839 [2001] [internal quotation marks and citation omitted], lv denied 97 NY2d 641 [2001]; accord People v DeFreitas, 116 AD3d 1078, 1083 [2014], lv denied 24 NY3d 960 [2014]).
 
 [2]
 

 Keith Dodge (hereinafter Dodge), the victim’s son, testified that he and the victim sold farm equipment, machinery and component parts from the subject property, that he worked on and repaired the machinery and components and that he was generally familiar with their inventory and where the items were stored on the property. Due to health problems, the victim had been staying temporarily at Dodge’s nearby home and Dodge had been regularly checking in on and maintaining the victim’s property. Dodge testified that the property contained farm equipment and machinery, tractors, balers, rakes and corn pickers, and other machinery and parts that were kept outside for potential buyers to view. Other component parts were stored inside the farmhouse and its attached garage to protect them from the elements and from thieves, including PTO shafts, motors, generators, starters, belt pulleys and radiators. When he visited the property on or about June 6, 2014, Dodge discovered that the tall grass leading to the garage and house was matted down and burned from a vehicle driving on it, and that pieces of farm machinery and parts that had been stored inside were missing or had been thrown outside through a window’s missing pane. Inside the garage, an area of the floor was bare where once farm equipment had been stored. As he left, Dodge found a receipt from Weitsman Shredding LLC, a scrap yard, indicating that defendant had turned in about 700 pounds of electric motors and 80 pounds of brass radiators. Dodge immediately visited a nearby scrap yard where he recognized and identified farm equipment, including starters, generators, motors and radiators that had been taken from inside the victim’s house and garage. Dodge then went to Weitsman’s scrap yard and identified more of their equipment and machinery, including PTO shafts, motors and starters. Dodge explained that he was able to identify many of the stolen items as having been stored inside the house based upon their condition, in that they had not rusted, had no water damage and had not deteriorated, and based upon his familiarity with their inventory and from recent visits to the property.
 

 Starace testified that defendant, a friend, got him involved in stealing scrap metal and drove him to the victim’s property, where they initially took items from outside. After defendant told him that the inside of the house was a “gold mine,” they started entering the farmhouse and garage—sometimes with Payne—and took motors, radiators and other metal parts that they later sold as scrap metal. Starace explained that, ordinarily, he went inside and threw items out of the broken window, and that defendant and Payne would load them on a backed-up vehicle and, later, turn them in for cash at the scrap yards. Although he was unsure of exact dates, he testified that they followed this pattern for about one week in early June 2014, and was clear that defendant and Payne sometimes also went inside the farmhouse to take items to be sold.
 

 Three owners or managers of nearby scrap yards testified that, during the relevant time period, Payne, a known customer, brought in unusually large quantities of scrap metal, radiators, motors and machinery, some of which was later identified as the victim’s property. Payne was usually accompanied by two other men during these transactions. The manager of Weits-man’s scrap yard identified defendant, with whom he was familiar, as present at the yard “numerous times” during these transactions. The scrap yard witnesses testified that receipts were produced for every transaction and copies of driver’s licenses were made to identify who was selling items brought to the yards, and Weitsman’s manager testified that three transaction receipts were issued to defendant for metal materials in the first week of June 2014. Defendant testified, admitting that he and the codefendants had taken metal components from the outside areas of the victim’s property on several occasions, but claimed that he had never entered the victim’s home or garage. Defendant also asserted that he had not discussed going inside the victim’s house with the codefendants, and that he had never witnessed their entry.
 

 Even if a different verdict would have been reasonable, upon weighing the relative probative force of the conflicting testimony and the weight of the conflicting inferences to be drawn therefrom, we find that the People proved all of the elements of burglary in the second degree beyond a reasonable doubt and that the verdict on these counts was not against the weight of the credible evidence (see People v Romero, 7 NY3d 633, 643 [2006]; People v Harden, 134 AD3d 1160, 1160 [2015], lv denied 27 NY3d 1133 [2016]). While defendant denied ever entering the dwelling, his account was not particularly compelling or believable, and it was contradicted by the detailed testimony of numerous credible witnesses, including Dodge, Starach and the scrap yard personnel. The testimony convincingly established that defendant persuaded the others to steal from inside the home, which he admitted he may have described as a “gold mine,” and that he knowingly participated with them in entering into and stealing from inside the home, taking large quantities of farm components and equipment. Contrary to defendant’s claims, while he received leniency in exchange for his testimony, Starach’s testimony was not so incredible or manifestly untrue as to be unworthy of belief and, deferring to the jury’s credibility determinations given its “opportunity to view the witnesses, hear the testimony and observe demeanor,” we find that the jury rationally discredited defendant’s account and that its verdict was not contrary to the weight of the evidence (People v Olsen, 124 AD3d 1084, 1087 [2015] [internal quotation marks and citations omitted], lv denied 26 NY3d 933 [2015]; see People v Johnson, 151 AD3d 1462, 1465 [2017]; People v Davis, 149 AD3d 1246, 1247 [2017], lv denied 29 NY3d 1125 [2017]).
 

 We are similarly not persuaded by defendant’s argument that the sentence was harsh and excessive. Defendant, who was 25 years old at the time of these incidents, has a lengthy criminal history and was not a passive participant, having initiated the plan to enter into the victim’s home in order to steal more valuable items. Given that he was convicted of four separate home invasions committed over the course of a week, he faced potential consecutive sentencing of up to 15 years on each conviction (see Penal Law §§ 70.00 [2] [c]; 70.25). In view of the foregoing, we do not find that County Court abused its discretion or that extraordinary circumstances are present to warrant a reduction of the sentence in the interest of justice (see CPL 470.15 [3] [c]; People v Sparks, 105 AD3d 1073, 1074-1075 [2013], lv denied 21 NY3d 1010 [2013]).
 

 Finally, we are not persuaded by defendant’s contention that the amount of restitution for the victim’s losses is unsupported. County Court properly credited the testimony of Dodge, who had bought, sold and repaired farm equipment and machinery and parts for 30 years and regularly attended auctions, with respect to the value of the stolen property (see People v Decker, 139 AD3d 1113, 1118 [2016], lv denied 28 NY3d 928 [2016]; People v Davis, 114 AD3d 1287, 1288 [2014]), and “[e]xpert testimony was not required” (People v Ford, 77 AD3d 1176, 1176-1177 [2010], lv denied 17 NY3d 816 [2011]). Dodge testified that, while there was no written inventory, he knew what was contained in the inventory based upon his participation in the business and recent visits to the property prior to the burglaries, and he was able to estimate how many of each component had been taken. Dodge estimated the value of each group of stolen components by factoring in the quantity, age and rarity of the components, he calculated the market value range,
 
 [3]
 
 and then used the low end of the estimated quantity and value or an average value to arrive at the total value of the loss. The court also advised defendant that it was relying upon the trial testimony and we find that, contrary to defendant’s claim, the combined testimony was not speculative or inadequate (see People v Deschaine, 116 AD3d 1303, 1303 [2014], lv denied 23 NY3d 1019 [2014]). If anything, Dodge’s testimony and the documentary evidence established that the victim’s actual loss was many times greater than the out-of-pocket loss that Dodge very conservatively calculated, a total value that was amply supported by the requisite preponderance of the evidence (see CPL 400.30 [4]; People v Tzitzikalakis, 8 NY3d 217, 221 [2007]). We disagree with defendant’s further claim that Dodge failed to subtract from his calculation of the total out-of-pocket losses the value of the stolen property returned to the victim by the scrap metal yards, as Dodge’s testimony, which the court credited, reflects that he factored the returned items into his estimates. The court was free to credit the People’s unrefuted testimony and evidence, which provided an adequate basis for the amount of restitution awarded, which will not be disturbed (see People v Deschaine, 116 AD3d at 1303). Defendant’s remaining claims similarly lack merit.
 

 Peters, P.J., Egan Jr., Devine and Pritzker, JJ., concur.
 

 Ordered that the judgment is affirmed.
 

 [1]
 

 . Payne and Starace each pleaded guilty to burglary in the third degree in satisfaction of the indictment.
 

 [2]
 

 . An attached garage has been recognized as part of a dwelling for this purpose (see People v Rivera, 301 AD2d 787, 789 [2003], lv denied 99 NY2d 631 [2003]; People v Monge, 248 AD2d 558, 559 [1998], lv denied 92 NY2d 856 [1998]).
 

 [3]
 

 . Dodge calculated the market resale value for the parts, which he explained was higher than the scrap metal value.