People v Pointer (2022 NY Slip Op 03933)

People v Pointer

2022 NY Slip Op 03933

Decided on June 16, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 16, 2022

110264
[*1]The People of the State of New York, Respondent,
v
Kaseem Pointer, Appellant.

Calendar Date:April 20, 2022

Before:Aarons, J.P., Pritzker, Reynolds Fitzgerald, Ceresia and Fisher, JJ.

Hug Law, PLLC, Albany (Matthew C. Hug of counsel), for appellant.
P. David Soares, District Attorney, Albany (Vincent Stark of counsel), for respondent.

Aarons, J.P.
Appeal from a judgment of the County Court of Albany County (Lynch, J.), rendered January 3, 2018, upon a verdict convicting defendant of the crimes of criminal possession of a weapon in the second degree, criminal possession of a controlled substance in the fourth degree (two counts), criminal possession of a controlled substance in the third degree (two counts) and criminal possession of a controlled substance in the seventh degree.
On January 10, 2017, defendant's wife made two 911 calls within minutes of each other and identified herself in each one. The wife stated in the first call that defendant was planning a retaliatory shooting but then reported in the second call that defendant had weapons and drugs in her apartment closet. Law enforcement searched the closet and found a gun and drugs. Defendant was arrested but subsequently released on his own recognizance. On January 20, 2017, defendant was taken into police custody as a suspect in a shooting. As part of a search, drugs were found on defendant.
In connection with these incidents, defendant was charged by indictment with various crimes. Prior to trial, defendant moved to suppress certain statements and physical evidence. After a suppression hearing, County Court partially denied the motion. The first jury trial resulted in a mistrial. Following a second jury trial, defendant was convicted of criminal possession of a weapon in the second degree, two counts of criminal possession of a controlled substance in the fourth degree, two counts of criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in the seventh degree. The court then held a persistent felony offender hearing, after which it sentenced defendant, as a persistent felony offender, to concurrent prison terms, the greatest of which was 20 years to life. Defendant appeals.
Defendant assails the verdict with respect to the convictions related to the events of January 10, 2017 as not being supported by legally sufficient evidence or, alternatively, as being against the weight of the evidence. Defendant specifically argues that he did not have dominion and control over the apartment where the gun and drugs were discovered. A 911 call from the wife was played for the jury wherein she provided the address of the apartment and stated that defendant had a gun and drugs in a closet therein. When defendant was approached by police officers on January 10, 2017, defendant indicated that he had come from his "baby mama's house" and gestured in the direction of the apartment. Defendant's clothing and shoes were found in the closet of the apartment, and DNA evidence connected defendant to the ammunition from the gun. A phone call made by defendant while he was in a police car was admitted into evidence wherein defendant stated, "they are going to find the guns, drugs and everything" and that his wife set him up. Viewing this evidence in the light most favorable [*2]to the People, it is legally sufficient to prove dominion and control (see People v Palin, 158 AD3d 936, 940 [2018], lv denied 31 NY3d 1016 [2018]; People v Shoga, 89 AD3d 1225, 1227-1228 [2011], lv denied 18 NY3d 886 [2012]; People v Tarver, 292 AD2d 110, 113-114 [2002], lv denied 98 NY2d 702 [2002]). Furthermore, although a contrary result would not have been unreasonable, having viewed the evidence in a neutral light, the verdict is not against the weight of the evidence (see People v Nichol, 121 AD3d 1174, 1177-1178 [2014], lv denied 25 NY3d 1205 [2015]; People v Perry, 116 AD3d 1253, 1255 [2014]).
Regarding that part of defendant's motion seeking suppression of the evidence discovered related to the events of the night of January 10, 2017, defendant contends that law enforcement officials did not have reasonable suspicion to detain him. A police officer testified at the suppression hearing that he received a dispatch call identifying defendant as a person in a parking lot who had a weapon on him and was planning a retaliation shooting. The officer was also given defendant's car model, license plate and color, as well as the particular clothing defendant was wearing. When the officer arrived at the parking lot with his partner, he saw defendant, who matched the description given in the dispatch call, putting a key into a car, which also matched the description provided by the dispatch call. The officer stated that, in view of the nature of the call, he approached defendant with his gun drawn and his partner handcuffed defendant.
"An anonymous tip cannot provide reasonable suspicion to justify a seizure, except where that tip contains predictive information — such as information suggestive of criminal behavior — so that the police can test the reliability of the tip" (People v Moore, 6 NY3d 496, 499 [2006] [citations omitted]).[FN1] In finding that reasonable suspicion existed, County Court credited the police officer's testimony. Deferring to the court's findings and credibility determinations and given the specific details provided in the police officer's testimony, defendant's contention is without merit (see People v Argyris, 99 AD3d 808, 810 [2012], affd 24 NY3d 1138 [2014], cert denied 577 US 1069 [2016]; People v Nesbitt, 56 AD3d 816, 818 [2008], lv denied 11 NY3d 928 [2009]; People v Maye, 206 AD2d 755, 757 [1994], lv denied 84 NY2d 1035 [1995]).
Furthermore, even if we agreed with defendant that reasonable suspicion no longer existed once a search of defendant's car and person did not reveal any illegal items, a detective testified at the suppression hearing that, prior to speaking to defendant in the parking lot, he received a call from a superior officer providing the address of the apartment where the gun and drugs could be found. Another detective similarly testified that a call was received concerning a weapon at the apartment. The testimony from the suppression hearing also discloses that law enforcement was provided with [*3]the address in the second 911 call. As such, contrary to defendant's assertion, law enforcement did not learn of the apartment address from defendant.
Defendant also argues that the search conducted on January 20, 2017 was illegal due to the absence of probable cause. A detective testified at the suppression hearing that he responded to a high-crime area in response to calls regarding a robbery and gunshots being fired. The detective questioned defendant, who informed the detective that he had been robbed. Defendant further informed the detective that he did not want police involvement, and the detective let him go. The detective then testified that, shortly thereafter, he received information from a sergeant that defendant was not free to leave because the sergeant received information that defendant was the shooter. Based on the foregoing, and inasmuch as the detective was entitled to rely on the directives provided by the sergeant (see People v Dowling, 75 AD3d 838, 840 [2010], lv denied 15 NY3d 952 [2010]), probable cause existed (see People v Vanness, 106 AD3d 1262, 1264 [2013], lv denied 22 NY3d 1044 [2013]; People v Bell, 5 AD3d 858, 860 [2004]). As such, County Court correctly denied that part of defendant's motion seeking the suppression of evidence discovered as a consequence of the search done on January 20, 2017.
Defendant argues that County Court erred in failing to suppress the DNA evidence recovered from a cup that defendant had used while in a police station interview room. As an initial matter, although defendant raised in his written suppression motion the issue of whether the DNA evidence should be suppressed, the court's decision following the suppression hearing does not reflect that a particular ruling was made on this point. Defendant did move for reargument of the court's suppression order but did not mention anything therein about the lack of a ruling concerning the DNA evidence. Because defendant failed to alert the court that it did not decide one part of his suppression motion, he acquiesced to the lack of ruling (see People v Henriquez, 246 AD2d 427, 427 [1998], lv denied 91 NY2d 942 [1998]) and cannot complain that the court failed to issue a ruling on this particular point.
Notwithstanding the foregoing, defendant also submitted a written motion in limine seeking to preclude the People from introducing the DNA evidence. As County Court found, defendant lacked standing given that he had no legitimate expectation of privacy over the cup (see People v Jenkins, 66 AD3d 800, 800 [2009], lv denied 15 NY3d 806 [2010]; People v Sterling, 57 AD3d 1110, 1111-1112 [2008], lv denied 12 NY3d 788 [2009]). The court therefore did not err in summarily denying defendant's request to preclude the DNA evidence.
Contrary to defendant's assertion, County Court correctly denied defendant's request for a circumstantial evidence charge. "A defendant's request for a circumstantial evidence instruction must be allowed when [*4]proof of guilt rests exclusively on circumstantial evidence" (People v Roldan, 88 NY2d 826, 827 [1996] [citation omitted]; see People v Daddona, 81 NY2d 990, 992 [1993]). In view of the 911 call indicating that defendant had guns and drugs in a closet and defendant's own statements that he was set up by his wife and that the guns and drugs would be found, the case against defendant did not derive solely from circumstantial evidence. Accordingly, the court was not required to give a circumstantial evidence charge (see People v Guidice, 83 NY2d 630, 636 [1994]; People v Ash, 162 AD3d 1318, 1322 [2018], lv denied 32 NY3d 1002 [2018]; People v Launder, 132 AD3d 1151, 1154 [2015], lv denied 27 NY3d 1153 [2016]).
As to defendant's remaining contentions, County Court did not abuse its discretion in allowing a detective to testify about what the wife told him. As the court found, it was admitted for the limited purpose of completing the narrative of the investigative process and the jury was so instructed (see People v Rose, 185 AD3d 1228, 1231 [2020], lv denied 35 NY3d 1115 [2020]; People v Horton, 173 AD3d 1338, 1341 [2019], lv denied 34 NY3d 933 [2019]). The court likewise did not abuse its discretion in precluding defendant from cross-examining a detective about certain prior bad acts (see People v Gannon, 174 AD3d 1054, 1061 [2019], lv denied 34 NY3d 980 [2019]; People v Major, 143 AD3d 1155, 1158-1159 [2016], lv denied 28 NY3d 1147 [2017]; People v Scott, 294 AD2d 661, 665 [2002], lvs denied 98 NY2d 731, 732 [2002]). To the extent that the court erred in these evidentiary rulings, any error was harmless (see generally People v Crimmins, 36 NY2d 230, 241-242 [1975]).
Finally, the People tendered sufficient admissible evidence at the persistent felony offender hearing to prove defendant's prior felony convictions (see People v Kenyon, 108 AD3d 933, 942 [2013], lv denied 21 NY3d 1075 [2013]; People v Shaw, 83 AD3d 1101, 1102-1103 [2011], lv denied 17 NY3d 801 [2011]). Because the imposed sentence is not harsh or severe, it will not be disturbed (see People v Dickinson, 182 AD3d 783, 790-791 [2020], lv denied 35 NY3d 1065 [2020]; People v Portee, 56 AD3d 947, 950 [2008], lvs denied 12 NY3d 820 [2009]).
Pritzker, Reynolds Fitzgerald, Ceresia and Fisher, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: Even though both 911 calls were admitted at trial and reflect that the wife gave her name in both calls, neither of them was admitted at the suppression hearing. As the People note, County Court was left with the misimpression that the wife did not identify herself in the first 911 call and that such call reporting a retaliation shooting by defendant was made anonymously. Notwithstanding the non-anonymous nature of the 911 calls as disclosed by the trial evidence, the court's suppression ruling must be judged based on the evidence adduced at the suppression hearing (see People v Walls, 37 NY3d 987, 989 [2021]).