People v Guevara (2025 NY Slip Op 04276)

People v Guevara

2025 NY Slip Op 04276

Decided on July 24, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:July 24, 2025

112320
[*1]The People of the State of New York, Respondent,
v
Luis Alfredo Monge Guevara, Also Known as Alfredo, El Gordo and El Diablo, Appellant.

Calendar Date:May 29, 2025

Before:Garry, P.J., Clark, Lynch, Reynolds Fitzgerald and McShan, JJ.

Theresa M. Suozzi, Saratoga Springs, for appellant.
Mary Pat Donnelly, District Attorney, Troy (Timothy D. Feenan of counsel), for respondent.

Clark, J.
Appeal from a judgment of the Supreme Court (Andrew Ceresia, J.), rendered July 26, 2019 in Rensselaer County, upon a verdict convicting defendant of the crimes of murder in the second degree and burglary in the second degree.
In October 2016, an individual was found dead in his apartment located in the City of Troy, Rensselaer County, and defendant was identified as a possible suspect. Soon after the incident, defendant and two other suspects were arrested while driving through Virginia, as they attempted to flee to Mexico. Defendant was thereafter charged with, as relevant herein, one count of burglary in the second degree (see Penal Law § 140.25 [2]) and two counts of murder in the second degree (see Penal Law § 125.25 [1], [3]). Following a jury trial, defendant was convicted of burglary in the second degree and murder in the second degree, premised on a felony murder theory (see Penal Law § 125.25 [3]). He was acquitted of the count of murder in the second degree premised on an intentional murder theory (see Penal Law § 125.25 [1]). Supreme Court sentenced defendant to an indeterminate prison term of 25 years to life for the murder conviction and to a lesser concurrent term for the burglary conviction. Defendant appeals.
Defendant argues that the verdict is not supported by legally sufficient evidence and that it is contrary to the weight of the evidence. "When assessing the legal sufficiency of a jury verdict, we view the facts in the light most favorable to the People and examine whether there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt. In turn, when conducting a weight of the evidence review, we must view the evidence in a neutral light and determine first whether a different verdict would have been unreasonable and, if not, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Jenkins, 215 AD3d 1118, 1119 [3d Dept 2023] [internal quotation marks and citations omitted], lv denied 40 NY3d 997 [2023]; see People v Luna, 228 AD3d 1061, 1062 [3d Dept 2024], lv denied 42 NY3d 971 [2024]; People v Osman, 228 AD3d 1007, 1008 [3d Dept 2024]). As relevant herein, "[a] person is guilty of burglary in the second degree when he [or she] knowingly enters or remains unlawfully in a building with intent to commit a crime therein, and when . . . [t]he building is a dwelling" (Penal Law § 140.25 [2]). As to the felony murder charge, "[a] person is guilty of murder in the second degree when . . . [a]cting either alone or with one or more other persons, he [or she] commits or attempts to commit . . . burglary . . . and, in the course of and in furtherance of such crime or of immediate flight therefrom, he [or she], or another participant, if there be any, causes the death [*2]of a person other than one of the participants" (Penal Law § 125.25 [3]). "A defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense" (CPL 60.22 [1]). Corroborative evidence "is enough if it tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the accomplice is telling the truth" (People v Reome, 15 NY3d 188, 192 [2010] [internal quotation marks and citation omitted]; see People v Kerrick, 206 AD3d 1268, 1270 [3d Dept 2022], lv denied 38 NY3d 1151 [2022]).[FN1]
Magdaleno Perez Calixto and Salomon Najera Hernandez — the two accomplices who were arrested traveling with defendant — testified that, on the day in question, they were with defendant and another accomplice, Cresenzio Salazar. According to Calixto and Hernandez, defendant shared a plan to steal money and other valuables from the victim's apartment while no one was home. The four men drove over in a single vehicle, then walked into the victim's apartment building, with Salazar carrying a hammer. When they entered the building, Calixto and Hernandez heard a voice and decided to return to the vehicle, but defendant and Salazar proceeded to the victim's apartment. A few minutes later, Hernandez returned to the building and entered the victim's apartment. He described a very bloody scene, with a knife lying on the kitchen floor next to the victim's body, and defendant and Salazar standing nearby. According to Hernandez, defendant directed him to search for money and other valuables in a different room, so he searched but found nothing of value. When he returned to the kitchen, he saw a plastic bag next to the body which, at defendant's direction, Hernandez carried out to the vehicle. Calixto and Hernandez both testified that as they approached Calixto's apartment, they disposed of certain items, including the plastic bag, in a nearby dumpster. According to Hernandez, defendant later admitted that he stabbed the victim multiple times. Separately, Calixto reported that, while he and defendant were detained at the Rensselaer County Jail, defendant admitted to stabbing the victim and that Salazar had repeatedly hit the victim in the head with a hammer. At trial, the medical examiner testified that the victim suffered extensive injuries, including 17 lacerations to the head and scalp and 13 stab wounds to his torso. The medical examiner determined that the cause of death was hemorrhage due to perforations of the heart, lungs and liver as well as severe skull fractures and brain injuries due to blunt force trauma to the head.
Video footage from a nearby business showed Calixto's vehicle parking by the victim's apartment. Both Calixto and Hernandez identified themselves, defendant and Salazar in the video, which showed the four men walking to and from the victim's apartment. Also, various law enforcement officers [*3]testified about the discovery of a pair of shoes, as well as a plastic bag containing a hammer and a knife, in a dumpster near Calixto's apartment. Blood samples taken from the hammer, the knife and the outside of the shoes matched the victim's blood, and defendant's DNA was found inside the shoes.
As to the burglary conviction, the testimony of Calixto and Hernandez established that defendant, believing the victim's apartment to be empty, concocted a plan to steal money and other valuables from within the victim's apartment and that defendant entered it to accomplish that illicit goal. Although defendant asserts that such evidence is legally insufficient because it relies on uncorroborated accomplice testimony, the video footage and the physical evidence recovered from the dumpster provided the requisite corroboration for the accomplices' testimony (see CPL 60.22 [1]; People v Ashe, 208 AD3d 1500, 1505 [3d Dept 2022], lv denied 39 NY3d 961 [2022]). This evidence, when viewed in the light most favorable to the People, provided the jury with a valid line of reasoning and permissible inferences so as to find that defendant entered the victim's apartment intending to commit a crime therein, thus satisfying the elements of burglary in the second degree beyond a reasonable doubt (see Penal Law § 140.25 [2]; People v Galusha, 211 AD3d 1421, 1423-1424 [3d Dept 2022], lv denied 39 NY3d 1154 [2023]; People v Valcarcel, 160 AD3d 1034, 1036-1037 [3d Dept 2018], lv denied 31 NY3d 1088 [2018]). As to weight of the evidence, Hernandez and Calixto each admitted that they were testifying in exchange for sentencing benefits. Thus, a different verdict would not have been unreasonable, as the jury could have doubted their veracity and discredited their testimony. However, inasmuch as the jury is in the best position to examine witness credibility, we defer to their credibility determinations and, viewing the evidence in a neutral light, we find that the verdict convicting defendant of burglary in the second degree is supported by the weight of the evidence (see People v Galusha, 211 AD3d at 1424; People v Valcarcel, 160 AD3d at 1037; People v Jones, 155 AD3d 1111, 1114 [3d Dept 2017], lv denied 31 NY3d 984 [2018]).
Turning to defendant's murder conviction, the evidence is clear that the victim was killed during the commission of the burglary.[FN2] Upon entering the victim's apartment, Hernandez saw the victim's body and a knife on the ground, and defendant and Salazar standing nearby. Defendant admitted that he stabbed the victim repeatedly, and that Salazar hit the victim in the head with a hammer, and such actions are consistent with the medical examiner's testimony about the cause of death. Viewing this evidence in the light most favorable to the People, we are satisfied that a valid line of reasoning existed to allow the jury to determine that, during the commission of a burglary, either defendant or Salazar caused the victim's death, thus satisfying the elements of [*4]murder in the second degree beyond a reasonable doubt (see Penal Law § 125.25 [3]; People v Smith, 174 AD3d 1039, 1041-1042 [3d Dept 2019], lv denied 35 NY3d 1097 [2020]; People v Valcarcel, 160 AD3d at 1037). As evidence of defendant's involvement rests largely upon the testimony of his accomplices, a different verdict would not have been unreasonable. However, the sequence of events provided by Calixto and Hernandez was consistent with video footage placing defendant at the scene. Their testimony was further supported by the blood and DNA evidence found on the knife, the hammer and the pair of shoes recovered from the dumpster near Calixto's apartment. Deferring to the jury's credibility determinations, we find that the verdict convicting defendant of murder in the second degree is supported by the weight of the evidence (see Penal Law § 125.25 [3]; People v Saunders, 176 AD3d 1384, 1388 [3d Dept 2019], lv denied 35 NY3d 973 [2020]; People v Smith, 174 AD3d at 1042-1043; People v Lalonde, 160 AD3d 1020, 1024-1025 [3d Dept 2018], lv denied 31 NY3d 1118 [2018]).
Next, we turn to defendant's contention that Supreme Court abused its discretion deciding various evidentiary issues. As to evidence that defendant and his accomplices disposed of shoes, a knife and a hammer in a dumpster, we are satisfied that the court made the appropriate threshold determination that the proffer was made for the nonpropensity purpose of completing the narrative of the two accomplices and the events of the day (see People v Lewis, 224 AD3d 1143, 1152 [3d Dept 2024], lv denied 42 NY3d 939 [2024]). Once that threshold step is satisfied, the court "may admit the evidence if it finds that the probative value of the evidence outweighs its potential for prejudice," which "determination may only be reversed where it constitutes an abuse of discretion as a matter of law" (People v Hodge, 224 AD3d 1082, 1088 [3d Dept 2024] [internal quotation marks, brackets and citations omitted], lv denied 41 NY3d 1002 [2024]; see People v Weinstein, 42 NY3d 439, 458 [2024]). Here, the probative value of admitting the evidence outweighed the potential for prejudice, as it explained the presence of the shoes, the knife and the hammer in the dumpster where law enforcement later discovered them, and Supreme Court further minimized such risk by providing appropriate limiting instructions (see People v Lewis, 224 AD3d at 1152; People v Malak, 117 AD3d 1170, 1175 [3d Dept 2014], lv denied 24 NY3d 1086 [2014]; see also People v Hodge, 224 AD3d at 1089; People v Ballard, 38 AD3d 1001, 1003 [3d Dept 2007], lv denied 9 NY3d 840 [2007]).
We also find no error in Supreme Court's decision to admit defendant's threatening statement to his accomplice in order to dissuade him from making any statements against defendant. Such evidence was highly probative and indicative of defendant's consciousness of guilt, and any undue prejudice was minimized by the court's limiting instruction, issued when the evidence was [*5]introduced and again during its final jury charge (see People v McCommons, 143 AD3d 1150, 1153-1154 [3d Dept 2016], lv denied 29 NY3d 999 [2017]; People v Wells, 141 AD3d 1013, 1019 [3d Dept 2016], lv denied 28 NY3d 1189 [2017]; People v Torres, 61 AD3d 489, 490 [1st Dept 2009], lv denied 13 NY3d 750 [2009]).
Additionally, defendant's assertion that Supreme Court should have suppressed incriminating statements that he made to Calixto in November 2016, while the two were detained at the Rensselaer County Jail, is also unavailing. Contrary to defendant's claim, Calixto was not acting as an agent of law enforcement when defendant made the statements at issue. Rather, the People only became passive recipients of the information after Calixto entered into a cooperation agreement with them in December 2017 (see People v Cardona, 41 NY2d 333, 335-336 [1977]; People v Lall, 223 AD3d 1098, 1108-1109 [3d Dept 2024], lv denied 41 NY3d 984 [2024]; People v Mero, 221 AD3d 1242, 1248 [3d Dept 2023], affd ___ NY3d ___ [2024]; People v Burchard, 20 AD3d 818, 820 [3d Dept 2005], lv denied 5 NY3d 851 [2005]). Also, as Calixto was not an agent of law enforcement, a CPL 710.30 notice was not required (see People v Pittman, 160 AD3d 1130, 1130 [3d Dept 2018], lv denied 31 NY3d 1151 [2018]; People v Phoenix, 115 AD3d 1058, 1062-1063 [3d Dept 2014], lv denied 23 NY3d 1024 [2014]).
Next, we turn to defendant's argument that Supreme Court erred by granting the People's request for an expanded jury charge on cause of death and by denying defendant's request for a circumstantial evidence jury charge.[FN3] As to the cause of death charge, the court did not err, as it merely provided the jury with an expanded definition of the governing law in accordance with the pattern jury instructions (see People v Uribe, 109 AD3d 844, 844 [2d Dept 2013], lv denied 23 NY3d 969 [2014]; CJI2d[NY] Cause of Death, https://www.nycourts.gov/judges/cji/1-General/CJI2d.Causation-Death.pdf [last accessed June 17, 2025]). As to the circumstantial evidence charge, a trial court must grant a defendant's request for such charge "when the proof of the defendant's guilt rests solely on circumstantial evidence" (People v Hardy, 26 NY3d 245, 249 [2015]; accord People v Taylor, 196 AD3d 851, 854 [3d Dept 2021], lv denied 37 NY3d 1030 [2021]). Contrary to defendant's argument, the record contains direct evidence of his guilt, as Hernandez placed defendant at the victim's apartment during the commission of the robbery, and both Calixto and Hernandez testified that defendant admitted to repeatedly stabbing the victim. As the People's case did not rest wholly on circumstantial evidence, the court did not need to issue such a jury charge (see People v Guidice, 83 NY2d 630, 636 [1994]; People v Pointer, 206 AD3d 1232, 1235-1236 [3d Dept 2022], lv denied 38 NY3d 1152 [2022]; compare People v Hardy, 26 NY3d at 249).
Defendant's argument that Supreme Court abused its discretion by failing to, sua sponte, declare a mistrial [*6]is unpreserved. Defendant failed to interpose a timely objection to the court's handling of purported juror misconduct or to seek a mistrial based upon the same (see CPL 280.10; People v Campbell, 196 AD3d 834, 838 [3d Dept 2021], lv denied 37 NY3d 1025 [2021]; see also People v Contompasis, 236 AD3d 138, 152 [3d Dept 2025], lv denied 43 NY3d 1007 [2025]). Lastly, defendant contends that Supreme Court's imposition of the maximum term for the felony murder conviction was harsh and excessive. Defendant's conviction for felony murder, a class A-I felony, required the imposition of an indeterminate prison term with a minimum between 15 and 25 years and a maximum of life (see Penal Law §§ 60.05 [2]; 70.00 [2] [a]; [3] [a] [i]; 125.25). Although defendant lacked a criminal history and was 20 years old at the time he engaged in the instant criminal conduct, he expressed no remorse for his role in this particularly brutal killing, which occurred during the commission of a burglary that defendant himself planned (see People v Grady, 233 AD3d 1369, 1374 [3d Dept 2024], lv denied 43 NY3d 963 [2025]; see generally People v Chappell, 198 AD3d 1018, 1021 [3d Dept 2021], lv denied 37 NY3d 1160 [2022]; People v Vega, 170 AD3d 1266, 1274 [3d Dept 2019], lv denied 33 NY3d 1074 [2019]). Therefore, under these circumstances, we find that imposition of the maximum sentence was not harsh or excessive (see CPL 470.15 [6] [b]).
Defendant's remaining arguments, to the extent not expressly addressed herein, have been considered and found to lack merit.
Garry, P.J., Lynch, Reynolds Fitzgerald and McShan, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: Supreme Court appropriately instructed the jury that accomplice testimony must be supported by corroborative evidence.

Footnote 2: To the extent that defendant argues that the evidence is legally insufficient to establish that he intended to harm the victim, we note that this is not an element of the felony murder subsection under which he was convicted (see Penal Law § 125.25 [3]), and that the jury acquitted defendant of the murder charge that required that he have the "intent to cause the death of another person" (Penal Law § 125.25 [1]).

Footnote 3: Defendant's additional challenge to the expanded jury charge on intent is of no consequence, as said charge was issued in connection with the count of intentional murder for which defendant was acquitted (see People v Gaylord, 224 AD3d 1169, 1174 n 3 [3d Dept 2024], lv denied 42 NY3d 926 [2024]; cf. People v Hackett, 167 AD3d 1090, 1094-1095 [3d Dept 2018]).