People v Galusha (2022 NY Slip Op 07481)

People v Galusha

2022 NY Slip Op 07481

Decided on December 29, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 29, 2022

112646
[*1]The People of the State of New York, Respondent,
v
Charles R. Galusha, Appellant.

Calendar Date:November 16, 2022

Before:Egan Jr., J.P., Lynch, Aarons, Reynolds Fitzgerald and McShan, JJ.

Karen G. Leslie, Riverhead, for appellant.
Kirk O. Martin, Special Prosecutor, Owego (Cheryl Mancini of counsel), for respondent.

Lynch, J.
Appeal from a judgment of the County Court of Broome County (Joseph F. Cawley Jr., J.), rendered July 7, 2020, upon a verdict convicting defendant of the crime of burglary in the second degree.
Defendant was charged by indictment with burglary in the second degree (see Penal Law § 140.25 [2]) based upon allegations that he broke into the home of Alla Boldina and Peter Connett (hereinafter collectively referred to as the victims) on November 1, 2018 and stole a collection of silver coins, a shotgun and a cosmetics bag. Defendant moved to dismiss the indictment due to purported defects in the grand jury proceeding, which motion County Court denied. Following trial, defendant was found guilty as charged and thereafter sentenced, as a second felony offender, to a prison term of 10 years to be followed by five years of postrelease supervision. Defendant appeals.
Defendant contends that the verdict is not supported by legally sufficient evidence and is against the weight of the evidence. Specifically, defendant maintains that the DNA evidence recovered from a cigarillo found at the scene of the crime was legally insufficient to sustain his conviction. "When considering a challenge to the legal sufficiency of the evidence, we view the evidence in the light most favorable to the People and evaluate whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime charged" (People v Oliveras, 203 AD3d 1233, 1234 [3d Dept 2022], lv denied 38 NY3d 1073 [2022] [internal quotation marks and citations omitted]; see People v Lafountain, 200 AD3d 1211, 1212 [3d Dept 2021], lv denied 38 NY3d 951 [2022]). "In assessing whether a verdict is supported by the weight of the evidence, we must first determine whether, based on all the credible evidence, a different finding would not have been unreasonable, and, if it would have been reasonable for the jury to reach a different conclusion, then we must weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine whether the jury has failed to give the evidence the weight it should be accorded" (People v Cade, 203 AD3d 1221, 1221-1222 [3d Dept 2022] [internal quotation marks, brackets and citations omitted]).
"As relevant here, a person is guilty of burglary in the second degree when he or she knowingly enters a dwelling with the intent to commit a crime therein" (People v Brown, 195 AD3d 1163, 1164 [3d Dept 2021] [citation omitted], lv denied 37 NY3d 1025 [2021]; see Penal Law § 140.25 [2]). "Notably, the intent necessary for burglary can be inferred from the circumstances of the entry itself" (People v Cason, 203 AD3d 1309, 1311 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 38 [*2]NY3d 1132 [2022]; see People v Ocasio, 167 AD3d 412 [1st Dept 2018], lv denied 32 NY3d 1208 [2019]).
Boldina testified that on the day of the burglary, she left her home at 1:00 p.m. and returned at 3:20 p.m. Upon her return, she observed Connett's chisel next to the front door, which was propped open and marked with two sets of black footprints — one set appearing to be about a size 11 or 13 shoe, and a smaller set appearing to be a size 7 or 8 shoe. She called the State Police, and, once a trooper assured that the home was safe, Boldina learned that only the master bedroom was disturbed. She saw many of their belongings in disarray, particularly in the walk-in closet. She discerned that Connett's silver coin collection and shotgun were missing. When Connett arrived home, Boldina left as police continued the investigation. She returned at 8:00 p.m. and realized her cosmetics bag was also missing. Later that evening, as she cleaned up the closet, she detected a strong smell and eventually identified the source as a cigarillo, which she found under a pile of clothes. Several days later, police retrieved the cigarillo and, because Boldina had picked up the cigarillo, police collected a DNA sample from her.
Reports and expert testimony from a forensic scientist working with the State Police established from initial testing of swabs from the cigarillo mouthpiece and Boldina that DNA from at least two donors, one of whom was male, was on the cigarillo mouthpiece, and Boldina was eliminated as one of the donors. A further search of a DNA database of convicted offenders "resulted in an association" with defendant. Thereafter, a buccal swab was taken from defendant, and further testing revealed that it was 43.99 million times more likely that the donors were defendant and another unrelated individual rather than two randomly selected unrelated individuals.
Patrick Skinner, an investigator with the State Police, testified that the initial DNA and database results led him to interview defendant, who admitted that he smoked cigarillos. Defendant also told Skinner that he knew Connett from working together, including some work at the victims' home. According to Skinner, defendant stated he had been inside the victims' home by invitation as recently as August or September 2018 — a claim that both Connett and Boldina refuted in their testimony. Moreover, Connett testified that he had ceased working with defendant in 2015 because defendant felt he had not received his fair share of the profits from one of their jobs and Boldina did not support the working relationship, though he and defendant remained cordial.
Viewed in the light most favorable to the People, the evidence was legally sufficient to support defendant's conviction. The cigarillo with defendant's DNA places him in the victims' home in the two hours Boldina was away, and the remaining elements and requisite intent can be inferred from testimony and photographs indicating a forced entry (see Penal [*3]Law § 140.25 [2]; cf. People v Hajratalli, 200 AD3d 1332, 1336 [3d Dept 2021], lv denied 38 NY3d 1033 [2022]).
We recognize that a different verdict would not have been unreasonable. Among other things, the jury could have assigned the DNA evidence less weight based on Connett's testimony that he was also a smoker — albeit of different tobacco products — and that police never collected a sample from him to exclude him as the second DNA donor. However, Connett testified that he was at work when the crime occurred, and Boldina confirmed that the cigarillo was not present before she left the home earlier that day, and the jury could readily find this testimony credible. On this record, given the evidence of forced entry, missing property and defendant's presence at the scene, we find that the burglary conviction is supported by the weight of the evidence (see People v Cason, 203 AD3d at 1314; People v Oliveras, 203 AD3d at 1238).
Defendant next challenges the integrity of the grand jury proceeding, contending that the People impermissibly relied on propensity evidence, namely, exhibits and testimony indicating that defendant's DNA was matched using a database containing DNA information from convicted offenders. Skinner testified that he relied on that match to run defendant's criminal history, discovering he was on probation, contacting defendant's probation officer and interviewing defendant at the probation office. The record reveals that no details of defendant's prior bad acts were disclosed by Skinner or the exhibits (compare People v Bryant, 200 AD3d 1483, 1488-89 [3d Dept 2021], appeal dismissed 38 NY3d 1158 [2022]). Rather, the complained-of references explained how Skinner identified and located defendant in the first place, thereby providing necessary background to his narrative (see People v Morales, 189 AD3d 1464, 1467 [2d Dept 2020]; People v Baber, 182 AD3d 794, 801 [3d Dept 2020], lv denied 35 NY3d 1064 [2020]), and the prosecutor mitigated the potential prejudice through appropriate instructions (cf. People v McCommons, 143 AD3d 1150, 1153 [3d Dept 2016], lv denied 29 NY3d 999 [2017]). In our view, alluding to defendant's prior convictions in this manner falls far short of demonstrating the kind of "'prosecutorial wrongdoing, fraudulent conduct or errors'" that would warrant the extraordinary relief of dismissing the indictment (People v Watson, 183 AD3d 1191, 1193 [3d Dept 2020], lv denied 35 NY3d 1049 [2020], quoting People v Huston, 88 NY2d 400, 409 [1996]; see CPL 210.35 [5]).
Lastly, the sentence is not unduly harsh or severe. In light of defendant's criminal history, we decline his request to modify the sentence in the interest of justice (see People v Hahn, 159 AD3d 1062, 1067 [3d Dept 2018], lv denied 31 NY3d 1117 [2018]; compare People v Harris, 206 AD3d 1454, 1460 [3d Dept 2022], lv denied 39 NY3d 940 [2022]; People v Hajratalli, 200 AD3d at 1340).
Egan Jr., J.P., Aarons, Reynolds Fitzgerald and McShan, JJ., concur.
ORDERED that the judgment is affirmed.