People v Coupe (2023 NY Slip Op 06171)

People v Coupe

2023 NY Slip Op 06171

Decided on November 30, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 30, 2023

113367
[*1]The People of the State of New York, Respondent,
v
Thomas J. Coupe, Appellant.

Calendar Date:October 19, 2023

Before:Lynch, J.P., Aarons, Pritzker, McShan and Mackey, JJ.

John R. Trice, Elmira, for appellant.
Joseph G. Fazzary, District Attorney, Watkins Glen (Sophie J. Marmor of counsel), for respondent.

Pritzker, J.
Appeal from a judgment of the County Court of Schuyler County (Matthew C. Hayden, J.), rendered March 10, 2022, upon a verdict convicting defendant of the crime of criminal mischief in the third degree.
Defendant was charged by indictment with one count of criminal mischief in the third degree and one count of criminal mischief in the fourth degree stemming from a May 2020 incident wherein defendant and his girlfriend (hereinafter the victim) were arguing, and defendant punched the victim's vehicle causing damage. After a jury trial, defendant was convicted of criminal mischief in the third degree. County Court thereafter sentenced defendant, as a second felony offender, to a prison term of 22 to 44 months.
Defendant first contends that the verdict is against the weight of the evidence. We disagree. As is relevant here, "[a] person is guilty of criminal mischief in the third degree when, with intent to damage property of another person, and having no right to do so nor any reasonable ground to believe that he or she has such right, he or she . . . damages property of another person in an amount exceeding [$250]" (Penal Law § 145.05 [2]). A defendant acts intentionally "when his [or her] conscious objective is to cause such result or to engage in such conduct" (Penal Law § 15.05 [1]) and "[i]ntent may be inferred from the defendant's conduct and the surrounding circumstances" (People v Stines, 212 AD3d 883, 885 [3d Dept 2023] [internal quotation marks and citations omitted], lv denied 39 NY3d 1113 [2023]).
The victim testified that on the night of the incident she and defendant, with whom she was in a "rocky" relationship, had just driven back from a store to the residence of defendant's friend and they were sitting in the victim's vehicle having a disagreement. The victim testified that defendant grew increasingly angry as the argument went on and the victim was frightened. After continuously asking defendant to exit her vehicle, she dialed 911, which "escalated" the situation. Defendant told the victim that calling 911 would "be the worst decision [she] ever [made] in [her] life" and physically prevented her from making the call. The victim explained that defendant was "[s]creaming and yelling" at her and that he was "visibly mad and angry." According to the victim, after defendant eventually exited her vehicle, he went around to the front and punched the hood of the vehicle. He then went to the passenger side and punched the windows and side of the vehicle. As a result, the victim's vehicle was damaged both on the hood and on the passenger side.[FN1] During her testimony, the victim admitted that she "tapped" defendant with her vehicle when she tried to pull away after he exited it, but she maintained that she did not "intentionally try to hit" him with her vehicle.
A neighbor who lived next door to the friend's residence testified that she looked out her window after hearing people yelling. She testified that she observed a male, who appeared "[*2]enraged" and "furious" jump onto the hood of the car and start pounding on it. She denied seeing the car hit the male. The friend who owned the residence where the incident occurred also testified that he was present in his driveway during the incident. He testified that the victim and defendant were arguing and that, during the argument, the victim "bumped" defendant with the vehicle three times while defendant was at the rear of the vehicle attempting to retrieve his belongings. The friend testified that defendant then punched the center of the hood of the victim's vehicle. A vehicle repair shop owner testified that he prepared an estimate for the victim and described the damage to the hood and the passenger side of the car. According to the repair shop owner, he estimated that it would cost $2,000 to repair the vehicle, with the hood repair itself costing between $1,500 and $1,800. A sergeant with the Schuyler County Sherriff's Department testified that he responded to the victim's 911 call and that he went to the friend's residence to speak with defendant and the friend. This interaction as well as a later one at the police station with defendant were recorded with his body camera, the recording of which was admitted into evidence. The sergeant testified that defendant stated that he had been hit by the victim's vehicle door and that defendant did not appear to need medical attention nor did defendant request to be taken to a hospital.
Based upon the foregoing, although a different verdict would not have been unreasonable had the jury believed that defendant did not intentionally damage the victim's hood, "when viewing all of the evidence in a neutral light and deferring to the jury's credibility determinations, we find that the weight of the credible evidence supports" the jury's verdict (People v Slivienski, 204 AD3d 1228, 1235 [3d Dept 2022], lv denied 38 NY3d 1136 [2022]; see People v Nellis, 217 AD3d 1056, 1059 [3d Dept 2023]). We are unpersuaded by defendant's contention regarding inconsistencies in the various witnesses' testimony negating the weight of the evidence supporting the verdict. "All of these witnesses were thoroughly cross-examined and 'any aspect of their testimony that could have been perceived as inconsistent . . . was fully explored and presented to the jury, which was entitled to credit their testimony' " (People v Velett, 205 AD3d 1143, 1145 [3d Dept 2022], lv denied 39 NY3d 988 [2022], quoting People v Thiel, 134 AD3d 1237, 1239 [3d Dept 2015], lv denied 27 NY3d 1156 [2016]).
Finally, we decline defendant's invitation to reduce his sentence in the interest of justice. Given his criminal history, failure to take responsibility and lack of remorse, we do not find County Court's sentence, which was below the statutory maximum for a second felony offender, to be unduly harsh or severe (see CPL 470.15 [6] [b]; People v Galusha, 211 AD3d 1421, 1425 [3d Dept 2022], lv denied 39 NY3d 1154 [2023]).
Lynch, J.P., Aarons, McShan [*3]and Mackey, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: Photographs were admitted into evidence illustrating the damage.