People v Jenne (2024 NY Slip Op 00476)

People v Jenne

2024 NY Slip Op 00476

Decided on February 1, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 1, 2024

CR-22-2017
[*1]The People of the State of New York, Respondent,
v
Thomas E. Jenne, Appellant.

Calendar Date:December 14, 2023

Before:Egan Jr., J.P., Pritzker, Ceresia, Fisher and Powers, JJ.

Angela Kelley, East Greenbush, for appellant.
F. Paul Battisti, District Attorney, Binghamton (Benjamin E. Holwitt of counsel), for respondent.

Fisher, J.
Appeal from a judgment of the County Court of Broome County (Kevin P. Dooley, J.), rendered May 28, 2021, upon a verdict convicting defendant of the crimes of aggravated family offense (four counts) and criminal contempt in the second degree (four counts).
In 2020, defendant was charged by indictment with four counts of aggravated family offense (counts 1, 3, 5, 7) and four counts of criminal contempt in the second degree (counts 2, 4, 6, 8), stemming from allegations that defendant contacted the victim by various means from February 2020 to March 2020, in violation of an order of protection prohibiting defendant from contacting the victim in person or by mail, email or electronic communications. Following a jury trial, defendant was found guilty as charged and was subsequently sentenced to an aggregate term of incarceration of 7½ to 15 years. Defendant appeals.
Defendant contends that the indictment must be dismissed as it is defective due to the introduction of highly prejudicial testimony before the grand jury. We disagree. An indictment may be dismissed where a defendant demonstrates that a grand jury proceeding "fails to conform to the requirements of [CPL article 190] to such degree that the integrity thereof is impaired and prejudice to the defendant may result" (CPL 210.35 [5]; see People v Jimenez, 39 NY3d 74, 78 [2022]; People v Hightower, 186 AD3d 926, 930 [3d Dept 2020], lv denied 35 NY3d 1113 [2020]). "Dismissal of an indictment is a drastic, exceptional remedy and should thus be limited to those instances where prosecutorial wrongdoing, fraudulent conduct or errors potentially prejudice the ultimate decision reached by the grand jury" (People v Coppins, 173 AD3d 1459, 1461 [3d Dept 2019] [internal quotation marks, brackets and citations omitted], lv denied 34 NY3d 929 [2019]). Indeed, it so follows that "not every improper comment, elicitation of inadmissible testimony, impermissible question or mere mistake renders an indictment defective" (People v Huston, 88 NY2d 400, 409 [1996]; accord People v Kidwell, 88 AD3d 1060, 1061 [3d Dept 2011]), particularly where "cautionary instructions [were] sufficient to dispel any potential prejudice or [where] the evidence presented at [the] grand jury was so overwhelming that it eliminated the potential for prejudice" (People v Shabazz, 211 AD3d 1093, 1100 n 2 [3d Dept 2022] [internal citations omitted], lv denied 39 NY3d 1113 [2023]; see People v Galusha, 211 AD3d 1421, 1425 [3d Dept 2022], lv denied 39 NY3d 1154 [2023]). "Rather, the submission of some inadmissible evidence typically will be deemed fatal only when the remaining evidence is insufficient to sustain the indictment" (People v Miller, 110 AD3d 1150, 1151 [3d Dept 2013] [internal quotation marks, brackets and citations omitted]).
Here, our review of the grand jury minutes reveals that the challenged evidence regarding defendant's prior conviction and the existence of an order of protection in favor of the victim was material and [*2]relevant to prove certain elements of the charged offenses (see CPL 190.65; People v Galusha, 211 AD3d at 1424-1425; see generally People v Thacker, 173 AD3d 1360, 1362 [3d Dept 2019], lv denied 34 NY3d 938 [2019]). As for the evidence of defendant's incarceration, this constituted necessary background information given that defendant committed some of the charged conduct utilizing a messaging service provided to incarcerated individuals, and we note that the prosecutor gave an appropriate cautionary instruction (see People v Galusha, 211 AD3d at 1425; People v Shabazz, 211 AD3d at 1100 n 2). Although the People concede that a witness provided improper testimony regarding facts underlying the prior conviction in response to a question from the grand jury foreperson, the prosecutor again gave a cautionary instruction regarding the limited purpose for which the prior conviction could be considered, and specifically instructed the grand jury not to speculate about the underlying facts (see People v Mujahid, 45 AD3d 1184, 1186 [3d Dept 2007]; lv denied 10 NY3d 814 [2008]). Under these circumstances, we find that the admission of this limited testimony did not rise to the level of impairing the integrity of the grand jury proceedings (see People v Skinner, 220 AD2d 806, 807 [3d Dept 1995], lv denied 87 NY2d 1025 [1996]; see also People v Huston, 88 NY2d at 409).

Next, we reject defendant's contentions that the People's theory at trial impermissibly deviated from the allegations contained in counts 3 and 4 of the indictment. Each count stated that "defendant did intentionally violate an order of protection . . . by leaving a message on [the victim's] phone." The People, who are allowed to further particularize the precise offense and its occurrence that a defendant allegedly committed (see CPL 200.95; People v Edmonds, 165 AD3d 1494, 1495 [3d Dept 2018]), provided defendant with a bill of particulars stating, as it relates to counts 3 and 4, that "defendant did send a message, via JPay to [the victim]" in violation of the order of protection.[FN1] Then, at trial, the People adduced evidence demonstrating that defendant sent the victim a JPay message which was received by her through an app on her phone. Based on the foregoing, the bill of particulars did not expand or alter the People's theory — but rather narrowed the description of the offense — which the People followed at trial and, therefore, did not deviate from the allegations contained in the indictment or bill of particulars (see People v Burke, 197 AD3d 967, 967-968 [4th Dept 2021], lv denied 37 NY3d 1159 [2022]; People v Edmonds, 165 AD3d at 1495). Furthermore, given that the bill of particulars was served approximately 10 months prior to trial, it cannot also be said that defendant suffered any prejudice by the People's theory of the case at trial (see People v Urtz, 176 AD3d 1485, 1491 [3d Dept 2019], lv denied 34 NY3d 1133 [2020]; see also People v Burke, 197 AD3d at 968; People v Johnson, 91 [*3]AD3d 1115, 1118 [3d Dept 2012], lv denied 18 NY3d 959 [2012]).
Defendant further raises several challenges relating to the JPay message, including hearsay, best evidence rule and authentication of the subject message at trial. Initially, defendant's contentions relating to hearsay and the best evidence rule are unpreserved for our review because he failed to make such an objection when the evidence was admitted (see People v Rivera, 212 AD3d 943, 947-948 [3d Dept 2023], lv denied 39 NY3d 1113 [2023]; People v Lafountain, 200 AD3d 1211, 1217 [3d Dept 2021], lv denied 38 NY3d 951 [2022]). Regarding the authentication of the JPay message, "[a]uthenticity is established by proof that the offered evidence is genuine and that there has been no tampering with it, and the foundation necessary to establish these elements may differ according to the nature of the evidence sought to be admitted" (People v Hughes, 114 AD3d 1021, 1023 [3d Dept 2014] [internal quotation marks, brackets and citations omitted], lv denied 23 NY3d 1038 [2014]). Specifically relating to messages on a cell phone or instant messenger, such messages "may be authenticated through, among other methods, the testimony of a participant in the conversation that it is a complete and accurate reproduction of the conversation and has not been altered" (People v Serrano, 173 AD3d 1484, 1487 [3d Dept 2019] [internal quotation marks and citations omitted], lv denied 34 NY3d 937 [2019]). Here, the victim testified that the exhibit admitted into evidence was identical to the instant message that she received from defendant through the JPay app on her phone. Her testimony was corroborated by the first deputy superintendent with the Department of Corrections and Community Supervision (hereinafter DOCCS), who testified that he oversaw the JPay tablet program and, in reviewing the JPay server and defendant's account, confirmed that the exhibit matched the exact JPay message sent by defendant to the victim. The deputy superintendent further testified that JPay messages cannot be altered or changed in any way once they are sent. Given this proffer, there was an adequate foundation for the admission of the JPay message into evidence, and, therefore, County Court did not abuse its discretion in admitting same (see id. at 1488; see also People v Rodriguez, 195 AD3d 1237, 1241 n 5 [3d Dept 2021], lv denied 37 NY3d 1061 [2021]).
As it further relates to the JPay message, we reject defendant's contention that the People violated their discovery obligations by failing to disclose a "report" that was created by the deputy superintendent. Indeed, the People have a duty to disclose "[a] copy of all electronically created or stored information seized or obtained by or on behalf of law enforcement from . . . a source other than the defendant which relates to the subject matter of the case" (CPL 245.20 [1] [u] [i] [B]). It is further true that the People have a duty to disclose "[a]ll reports, documents, records, data[*4], calculations or writings, including but not limited to . . . [those] made by a person whom the [People] intend[ ] to call as a witness at trial or a pre-trial hearing" (CPL 245.20 [1] [j]). However, for the purposes of discovery, DOCCS is not a "law enforcement" agency, has been found to be "outside of the legal or practical control of local prosecutors" and, therefore, the People cannot be deemed to be in constructive possession of that which DOCCS possesses (People v Kelly, 88 NY2d 248, 253 [1996]; see People v Spruill, 164 AD3d 1270, 1274 [2d Dept 2018], lv denied 33 NY3d 954 [2019]). Moreover, although the deputy superintendent testified that he "ran [a] report" when reviewing defendant's JPay account, the record before us is clear that he did not create a report or another type of document. Rather, the deputy superintendent merely had looked at the records on the JPay server that appeared as a result of his search and then testified as to his personal knowledge of same. Inasmuch as defendant also knew of the JPay message that was the product of the deputy superintendent's search — and further had the opportunity to cross-examine the witness regarding his personal knowledge of such search and the exhibit — it cannot be said that defendant suffered any prejudice from this occurrence (see People v Decker, 218 AD3d 1026, 1039 [3d Dept 2023], lv denied 40 NY3d 1012 [2023]; compare People v O'Brien, 140 AD3d 1325, 1328 [3d Dept 2016]). Accordingly, County Court did not abuse its discretion in denying defendant's request to strike the deputy superintendent's testimony as a discovery sanction (see People v Decker, 218 AD3d at 1039; see also People v Sweet, 200 AD3d 1315, 1319 [3d Dept 2021], lv denied 40 NY3d 936 [2023]).
The remaining contentions do not warrant prolonged discussion. Defendant failed to object to County Court's Sandoval compromise at the close of the Sandoval hearing and, therefore, his challenge to it is unpreserved for our review (see People v Casey, 214 AD3d 1121, 1123 [3d Dept 2023], lv denied 40 NY3d 927 [2023]; People v Cooper, 199 AD3d 1061, 1064 [3d Dept 2021], lv denied 38 NY3d 926 [2022]). As for defendant's argument relating to the court clerk reading the names of potential witnesses to a part of the prospective jury pool, such issue was not preserved for our review inasmuch as it was consented to and was not a mode of proceedings error (see People v King, 27 NY3d 147, 154 [2016]; see also People v Mack, 27 NY3d 534, 540-541 [2016]; People v Witherspoon, 210 AD3d 1145, 1147 [3d Dept 2022], lv denied 39 NY3d 1076 [2023]; People v Stephenson, 205 AD3d 1217, 1219 [3d Dept 2022], lv denied 38 NY3d 1153 [2022]). Further, by not requesting a jury charge on "geographic jurisdiction or venue, defendant waived any challenge on that issue" (People v Roulhac, 166 AD3d 1066, 1068 [3d Dept 2018], lv denied 32 NY3d 1128 [2018]). Defendant also failed to preserve his contentions related to the jury instructions (see CPL 470.05 [2]; People [*5]v Cotto, 218 AD3d 1021, 1025 [3d Dept 2023], lv denied 40 NY3d 1039 [2023]) and the verdict sheet (see People v Morton, 198 AD3d 1176, 1180 [3d Dept 2021], lv denied 37 NY3d 1163 [2022]).
Lastly, defendant contends that his sentence was based on improper factors and, nevertheless, that the sentence imposed was harsh and severe. However, defendant's contentions that County Court considered improper factors in imposing the sentence is unpreserved inasmuch as he failed to raise an objection to same at the time of sentencing (see People v White, 139 AD3d 1260, 1260 [3d Dept 2016]; see also People v Lane, 218 AD3d 1152, 1153 [4th Dept 2023]). As it relates to the sentence imposed, the instant offenses consisted of "separate and distinct contact[s] with the victim" through various mediums and concerning messages, including that defendant promised he would kill anyone who had a relationship with the victim in a message sent while he was physically in the custody of DOCCS (People v Parks, 180 AD3d 1109, 1110 [3d Dept 2020] [internal quotation marks omitted]). When further considering defendant's lack of remorse and criminal history, as well as the potential maximum sentence of four years for each aggravated family offense under counts 1, 3, 5 and 7 (see Penal Law §§ 70.06 [3] [e]; [4] [b]; 240.75), we find that County Court's sentence was neither harsh nor severe and we decline defendant's invitation to modify it in the interests of justice (see People v Caraballo, 213 AD3d 1142, 1145 [3d Dept 2023]; People v Griner, 207 AD3d 892, 893 [3d Dept 2022]). We have considered the parties' remaining contentions and have found them to be lacking merit or academic.[FN2]
Egan Jr., J.P., Pritzker, Ceresia and Powers, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: JPay is a company that provides services to incarcerated individuals and their family and friends, including through a downloaded app for a tablet or smartphone that allows for, among other things, the sending and receiving of messages through email, "videogram" or instant messaging.

Footnote 2: To the extent that defendant contends that his trial counsel was ineffective for failing to preserve numerous issues for appellate review, inasmuch as any objections would have had little to no chance of success, defendant was not deprived of meaningful representation based upon this failure (see People v Franklin, 216 AD3d 1304, 1313 [3d Dept 2023], lv denied 40 NY3d 934 [2023]; People v Rose, 185 AD3d 1228, 1232 [3d Dept 2020], lv denied 35 NY3d 1115 [2020]).