People v Rivera (2025 NY Slip Op 03362)

People v Rivera

2025 NY Slip Op 03362

Decided on June 5, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 5, 2025

113619
[*1]The People of the State of New York, Respondent,
v
Octavio Rivera, Appellant.

Calendar Date:April 21, 2025

Before:Egan Jr., J.P., Reynolds Fitzgerald, Fisher, Powers and Mackey, JJ.

Matthew C. Hug, Albany, for appellant.
Lee C. Kindlon, District Attorney, Albany (Daniel J. Young of counsel), for respondent.

Reynolds Fitzgerald, J.
Appeal from a judgment of the Supreme Court (Peter Lynch, J.), rendered December 6, 2021 in Albany County, upon a verdict convicting defendant of the crime of burglary in the second degree.
Defendant was charged by indictment with burglary in the second degree based upon allegations that he entered a home on Quail Street in the City of Albany on November 27, 2018, and took two laptops. Approximately one month after the robbery, defendant was taken to an Albany Police Department police station where he was interviewed regarding his involvement in the robbery. Law enforcement officials subsequently obtained and executed search warrants for both the contents of defendant's cell phone and his residence. As a result of these searches, police came upon a selfie photograph of defendant that depicted him wearing a coat with red and green stripes on the sleeves and a knit hat. Prior to trial, defendant moved to suppress certain evidence obtained in the execution of these warrants, as well as certain oral statements made to the police, and identification testimony that he alleged was the result of improper photo identification procedures and was unduly suggestive. After a suppression hearing, Supreme Court denied the motion in its entirety. Thereafter, defendant entered a guilty plea to the charge of burglary in the second degree. Subsequently, defendant moved to withdraw his plea, and the court allowed him to do so. Afterward, defendant moved to reopen the suppression hearing based on grand jury testimony which allegedly contradicted the detective's statements made in the search warrant applications. The court denied the motion, and the matter proceeded to trial. Defendant was found guilty as charged and was sentenced to a prison term of seven years, to be followed by five years of postrelease supervision. Defendant appeals.
Defendant argues that the verdict is not supported by legally sufficient evidence and is against the weight of the evidence, contending that the People failed to establish his identity as the perpetrator of the burglary. "In conducting a legal sufficiency analysis, this Court views the evidence in the light most favorable to the People and evaluates whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crimes charged" (People v Montgomery, 229 AD3d 899, 900 [3d Dept 2024] [internal quotation marks and citations omitted], lv denied 42 NY3d 972 [2024]). "In contrast, when assessing whether a verdict is supported by the weight of the evidence, we must first determine whether, based on all the credible evidence, a different finding would not have been unreasonable, and, if it would have been reasonable for the jury to reach a different conclusion, then we must weigh the relative probative force of conflicting testimony and [*2]the relative strength of conflicting inferences that may be drawn from the testimony to determine whether the jury has failed to give the evidence the weight it should be accorded" (People v Jones, 215 AD3d 1123, 1124 [3d Dept 2023] [internal quotation marks and citations omitted], lv denied 40 NY3d 935 [2023]).
"As relevant here, a person is guilty of burglary in the second degree when he or she knowingly enters a dwelling with the intent to commit a crime therein" (People v Galusha, 211 AD3d 1421, 1423 [3d Dept 2022] [internal quotation marks and citation omitted], lv denied 39 NY3d 1154 [2023]; see Penal Law § 140.25 [2]). "As an implicit but necessary element of each and every crime, the People must prove beyond a reasonable doubt the identity of the defendant as the person who committed the crime" (People v Grady, 233 AD3d 1369, 1370-1371 [3d Dept 2024] [internal quotation marks, brackets and citations omitted], lv denied ___ NY3d ___ [Apr. 21, 2025]; accord People v Montgomery, 229 AD3d at 901).
At trial, the two victims — who were college roommates at the time — testified that they had been up late studying and had gone to bed at approximately 2:00 a.m. on the night of the burglary. Shortly thereafter, they heard someone enter and walk throughout their home, shouting "hello." When one of the victims opened her door, the person fled, and she did not see the person's face. After looking around the home, the victims noticed that their laptop computers were missing. One of the victims further testified that no one was given permission to enter the home or to take their laptops.
Several law enforcement personnel involved in the investigation also testified. The lead detective testified that surveillance footage was obtained from several different buildings and city cameras in the area. Said footage showed a man, matching defendant's description and wearing a coat with red and green stripes on the sleeves, a knit hat and carrying an umbrella, entering and leaving a bodega located near the victims' residence, walking to the victims' home, entering the home, leaving with a laptop in his hand, walking away from the home and subsequently getting into a cab. The detective also pointed out that a portion of this video footage clearly shows defendant's face. He went on to explain how he had subsequently located the cab driver in question, interviewed him about the fare he had picked up at that particular time and place and learned that that particular fare had offered to sell the driver a laptop.[FN1] He also found out where the fare had gotten out of the cab and began to monitor that area.
At a later date, the detective spotted defendant — who matched the physical attributes of the man in the surveillance footage — and asked him to accompany him to the police station to be interviewed. During the interview, defendant identified himself as the person in the video footage. The detective then arrested defendant.
Defendant testified in his own defense to [*3]a number of things including, as pertinent here, that he did not commit the burglary, that he did not use a taxicab, that the photograph shown to him by the detective during his questioning was indeed of himself, but that it was from an entirely different time and place than the night in question and, finally, that he was confused throughout the police interview. Defendant also called his brother and his brother's friend, who testified that the person in the video footage was not defendant, but instead, was an individual who frequently walks around their neighborhood.
Based on the foregoing, when considering the evidence in the light most favorable to the People, a rational person could conclude that the perpetrator's identity was sufficiently proven to be defendant. The video footage tracked defendant's movements to the victims' home, captured him entering and leaving the home with a laptop in his hand. The defendant identified himself as the perpetrator upon being shown a still from the video footage. Additionally, defendant's selfie cell phone photograph obtained during the search shows him in the distinctive coat with red and green stripes and a knit hat (see People v Grady, 233 AD3d at 1371-1372; People v Alexander, 231 AD3d 1310, 1312 [3d Dept 2024]). As to the weight of the evidence, a different verdict would not have been unreasonable especially if the jury were to have been persuaded by defendant's and his witnesses' testimony. However, viewing the evidence in a neutral light, while deferring to the jury's credibility determinations, we are satisfied that the weight of the evidence supports the verdict (see People v Montgomery, 229 AD3d at 903; People v Galusha, 211 AD3d at 1424; People v Smith, 210 AD3d 1297, 1299 [3d Dept 2022], lv denied 39 NY3d 1080 [2023]).
Defendant next contends that Supreme Court erred in denying his motion to suppress the statements he made during the police interview since he unequivocally invoked his right to remain silent. Additionally, defendant asserts that he was coerced into cooperating with the police because, while conducting his interview, the police used the pretext that the incident involved an assault rather than a burglary. Initially, it is true that the detective candidly admitted that when defendant first asked the purpose of the interview, he responded that it was about "a fight." However, a law enforcement official may use minor deception as part of their questioning, as long as the deception is not so fundamentally unfair as to result in unduly coercive police conduct. Here, the detective's pretext that the incident involved an assault, rather than a burglary, in initially seeking defendant's cooperation was a minor deception unaccompanied by any false promises, threats or coercive tactics, thus it did not constitute unduly coercive or deceptive police conduct (see People v Hatch, 230 AD3d 908, 915 [3d Dept 2024], lv denied 42 NY3d 1020 [2024]; People v Jackson, 217 AD3d 1271, 1272 [3d Dept 2023[*4]], lv denied 40 NY3d 951 [2023]; People v Jeremiah, 147 AD3d 1199, 1203 [3d Dept 2017], lv denied 29 NY3d 1033 [2017]).
As to defendant invoking his right to remain silent, "[i]f a person who is subject to police interrogation indicates in any manner, at any time prior to or during questioning, that he or she wishes to remain silent, the interrogation must cease. . . . Whether that request was unequivocal is a mixed question of law and fact that must be determined with reference to the circumstances surrounding the request, including the defendant's demeanor, manner of expression and the particular words found to have been used by the defendant" (People v Slivienski, 204 AD3d 1228, 1235 [3d Dept 2022] [internal quotation marks, brackets and citations omitted], lv denied 38 NY3d 1136 [2022]; see People v Dorvil, 234 AD3d 1106, 1112 [3d Dept 2025]). At the suppression hearing, the People introduced the testimony of the investigator who interviewed defendant, along with the audiovisual recording of the interview. A review of these demonstrates that within minutes of the interview beginning the detective advised defendant that he was free to leave at any time and that he was going to read defendant his rights. Defendant replied, "if you read me my rights, all questions stop." Defendant further stated that he was intelligent, he knew his rights and was willing to cooperate. The detective then explained to him that the only way he could ascertain if defendant knew his rights was for him to read them to him, ask him if he understood them, and then, with those rights in mind, if he was still willing to answer his questions. Eventually, the detective read defendant his rights and he replied that he understood them and was willing to proceed. Thereafter, defendant actively engaged in discussions with the detective and answered his questions. Defendant's statements and actions at this time, in agreeing to cooperate with the police, his participation in viewing the surveillance footage and answering the detective's questions, amounted to a waiver of his Miranda rights and not an unequivocal invocation of his right to remain silent (see People v Durfey, 170 AD3d 1331, 1336 [3d Dept 2019], lv denied 34 NY3d 980 [2019]; People v Carrion, 277 AD2d 480, 481 [3d Dept 2000], lv denied 96 NY2d 757 [2001]).
However, later in the interview, after defendant was shackled to a chair, defendant did unequivocally invoke his right to remain silent, which required the questioning to stop. Given this unequivocalinvocation to remain silent, the police violated defendant's right when they continued to interrogate him. However, given the overwhelming proof of defendant's guilt, as well as the fact that defendant's statements given to the investigator after this point were, for the most part, exculpatory, there is no reasonable possibility that the error may have contributed to defendant's conviction; thus, we find this error to be harmless and reversal is not required (see People [*5]v Dorvil, 234 AD3d at 1113-1114; People v Slivienski, 204 AD3d at 1236 ).
Nor are we persuaded by defendant's claim that Supreme Court abused its discretion in denying his motion to reopen the suppression hearing. "A court may permit a defendant to renew his or her suppression motion and reopen a suppression hearing if the court is satisfied, upon a showing by the defendant, that additional pertinent facts have been discovered by the defendant which he or she could not have discovered with reasonable diligence before the determination of the motion" (People v Almenteros, 214 AD3d 1027, 1029 [3d Dept 2023] [internal quotation marks, ellipsis and citations omitted], lv denied 40 NY3d 927 [2023]; see People v Newell, 148 AD3d 1216, 1219-1220 [3d Dept 2017], lv denied 29 NY3d 1035 [2017]). Defendant asserts that there are discrepancies between the detective's attestations set forth in his search warrant applications and the cab driver's grand jury testimony related to identifying defendant as the person who was in his cab that night. As Supreme Court noted, the cab driver's ability to identify defendant was questionable at the time of the suppression hearing. As this issue was testified to and otherwise brought to light at the suppression hearing, we do not find that Supreme Court abused its discretion in denying defendant's motion to reopen the suppression hearing (see People v Castro, 206 AD3d 1444, 1448 [3d Dept 2022], lv denied 38 NY3d 1132 [2022]; People v Newell, 148 AD3d at 1220; People v Rivera, 124 AD3d 1070, 1071 [3d Dept 2015], lv denied 26 NY3d 971 [2015]).[FN2]
Defendant's argument that he did not receive the effective assistance of counsel is equally unpersuasive. "To establish a claim of ineffective assistance of counsel, a defendant is required to demonstrate that he or she was not provided meaningful representation and that there is an absence of strategic or other legitimate explanations for counsel's allegedly deficient conduct. A claim will fail so long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation" (People v Moore, 223 AD3d 1085, 1097 [3d Dept 2024] [internal quotation marks and citations omitted], lv denied 41 NY3d 1003 [2024]; see People v Wilcox, 231 AD3d 1350, 1350-1351 [3d Dept 2024]).
Specifically, defendant alleges that counsel failed to argue that the lead detective interfered with defendant's constitutional right to remain silent during the interrogation, failed to provide proper proof of service with regard to the missing witness whom he allegedly had subpoenaed to appear and testify, and further failed to provide a notarized statement from said witness. Lastly, counsel did not seek a hearing regarding the discrepancy between the lead detective statements contained in the search warrant applications and the cab driver's grand jury testimony. Defendant's contentions are belied by [*6]the record, as counsel moved to suppress evidence based on defendant's right to remain silent during the interrogation and moved to reopen the suppression hearing based on the discrepancy in the detective's statements. As to the missing witness, counsel advocated for a material witness order and, after a hearing, Supreme Court granted defendant the benefit of a missing witness instruction. Having reviewed these claims of ineffective assistance of counsel, we find defendant has not demonstrated the absence of strategic or other legitimate explanation for the alleged deficiencies of counsel (see People v Wilcox, 231 AD3d at 1352; People v Porter, 184 AD3d 1014, 1019 [3d Dept 2020], lv denied 35 NY3d 1069 [2020]; People v Seecoomar, 174 AD3d 1154, 1158 [3d Dept 2019], lv denied 34 NY3d 1019 [2019]). Moreover, when viewing counsel's performance in its totality, including pursuing a trial strategy of questioning the identity of defendant as the perpetrator, actively pursuing and engaging in pretrial suppression hearings, vigorously cross-examining the People's witnesses and presenting defense witnesses, we conclude that defendant received meaningful representation (see People v Wilcox, 231 AD3d at 1352; People v Hines, 214 AD3d 1117, 1121 [3d Dept 2023], lv denied 39 NY3d 1155 [2023]).
Egan Jr., J.P., Fisher, Powers and Mackey, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: At trial, the cab driver could not identify defendant as the fare in question.

Footnote 2: Defendant references in this argument that the People committed a Brady violation by failing to disclose the grand jury transcripts prior to the suppression hearing. Defendant previously argued this in his motions to vacate the guilty plea and to dismiss the indictment in the interest of justice. In each motion, Supreme Court determined that defendant failed to meet his burden in establishing a Brady violation. We agree. "To establish a Brady violation, a defendant must show that the evidence is favorable to him or her because it is either exculpatory or impeaching in nature, the evidence was suppressed and prejudice arose because the suppressed evidence was material" (People v Baez, 232 AD3d 1044, 1047 [3d Dept 2024] [internal quotation marks and citations omitted]). Initially, while the People did not disclose the transcripts prior to the suppression hearing, the detective testified at the hearing that the cab driver was unable to identify defendant and, further, defendant was able to cross-examine the detective as to this issue. As such, defendant was not materially prejudiced (see People v Wideman, 192 AD3d 1384, 1387 [3d Dept 2021], affd 38 NY3d 1067 [2022]) and has not established a Brady violation (see People v Lewis, 167 AD3d 158, 164 [3d Dept 2018], lv denied 33 NY3d 1033 [2019]).